VOELKEL, Appellant, vs. THE SUPREME TENT OF THE
KNIGHTS OF THE MACCABEES OF THE WORLD, Respond-
ent.

*November 29, 1902—January 13, 1903.*

*Life insurance: Benefit associations: Suicide: Waiver: Admissions-
against interest: Evidence.*

1. The rules of a mutual benefit association provided that the local
tent was the agent of its members in collecting dues and assess-
ments, and that the supreme tent should not be liable for any
negligence, or bound by any illegal action or irregularity, of
such local tent. The rules further provided that, in case of
suicide, the association should be liable only to the amount of
assessments paid in. Four days after the death of an insured
by suicide, the collector of a local tent accepted of the bene-
ficiary the assessments due at the date of insured's death. *Held,*
that if such reception of the dues was irregular, it was an error
of the beneficiary's own agent, of which she could not take
advantage.

2. Where a mutual benefit association was liable for some amount,
whether the insured committed suicide or not, the fact that the
association requested proofs of death, which were furnished,
and the beneficiary, after her claim had been rejected because
of suicide, prosecuted at some expense an appeal before the
appellate tribunal of the association, does not operate as a
waiver.

3. Statements by a beneficiary in the proofs of death that the cause
of insured's death was suicide are admissions against interest,
and establish *prima facie* the fact of suicide.

4. In an action on a mutual benefit certificate the evidence ex-
amined, and *held* to support a finding that the cause of insured's
death was suicide.

WINSLOW and DODGE, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwau-
kee county: LAWRENCE W. HALSEY, Circuit Judge. *Af-
firmed.*

Action on a policy of life insurance issued by defendant
on the life of Joseph Dempke, payable to the plaintiff, his
wife. The assured died February 8, 1900. Plaintiff has-

since married. The complaint is in the usual form. The defense was that the deceased committed suicide contrary to the terms of the policy and application. Section 173 of defendant's rules declares that no benefit shall be paid "when death was the result of suicide within five years after admission." If death by suicide occurs within said time, all assessments paid to the supreme tent by such member shall be paid back to the beneficiary named in the certificate in full for the amount that can be claimed in any case. Defendant tendered judgment for $168.58, being the amount of assessments paid, with interest, and for costs. It was a conceded fact in the case that Dempke came to his death by a pistol wound in the head. The rules of the defendant required plaintiff to present proofs of death on blanks furnished by it, showing, among other things, the cause of death. In compliance therewith, plaintiff furnished said proofs, in which it was stated three times that the cause of death was suicide by shooting. The only question litigated on the trial respecting the cause of death was whether the pistol was fired intentionally or accidentally. Some question as to waiver by defendant was presented, which will be noted in the opinion. After hearing all the proofs, the trial court directed a verdict for defendant on both issues. A new trial was denied, and judgment entered for plaintiff for the amount of assessments paid, interest, and costs to time of tender of judgment, from which she has taken this appeal

For the appellant there was a brief by *Nath. Pereles & Sons,* and oral argument by *C. F. Hunter.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *George Lines,* of counsel, and oral argument by *Mr Lines.*

BARDEEN, J. 1. As we read and interpret defendant's rules, if the death of the insured occurred by suicide within five years after his admission to the order his beneficiary

would only be entitled to the assessments paid in. On February 12, 1900, four days after the insured's death, the plaintiff paid the record keeper of the local tent $2.25 for an assessment due on February 1st, and thereafter the said record keeper asked plaintiff for proofs of death, which she furnished at the expense of six or eight dollars. After such proofs were furnished, her claim for the full amount under the certificate was rejected because of suicide by insured, and she was thereafter notified that she might appear before the appellate tribunal of the order, and show cause why she should receive any more than had been paid for assessments. This she did, but the court refused to allow her to show the amount of such expense. Upon these facts, the plaintiff claims a waiver. As to the question of receiving the money after death of insured, sections 233 and 234 of defendant's rules provide that the subordinate tent is the agent of its members in collecting and transmitting dues and assessments, and that the supreme tent should not be liable for any negligence, or bound by any illegal action or irregularity, of such subordinate tent. Under the facts stated and the rules noted, the reception of the money by the collector, if irregular, was an error of the plaintiff's own agent, which she cannot now take advantage of.

Under defendant's laws, it was responsible in some amount, whether the insured committed suicide or not. It had a right to demand proofs of death in either case. No liability arose until such proofs were furnished. The fact that plaintiff furnished such proofs, and prosecuted an appeal before the appellate tribunal at some expense, did not operate as a waiver, as such procedure and the expense thus incurred was in pursuance of her attempt to establish her claim under the laws of the order. The defendant was absolutely entitled to proofs of death under its rules. The pursuit of her rights before the appellate tribunal of the order was purely voluntary, and not in any way induced by the defendant. No elements of waiver

were shown, and the trial court rightly denied plaintiff any relief on that ground.

2. It was a conceded fact that Dempke came to his death by a pistol-shot wound in the head, and that such wound was occasioned through the active agency of deceased. In complying with defendant's rules in relation to proofs of death, the plaintiff asserted in her own affidavit, in the certificate of the coroner, and again in the certificate of the lodge officers, that the cause of Dempke's death was suicide by shooting. These statements were admissions against interest, and established *prima facie* the fact of suicide by the insured. *Hart v. Fraternal Alliance,* 108 Wis. 490, 494, 84 N. W. 851, and cases cited. Such proofs being produced by the plaintiff, and showing death from one of the causes excepted in the policy, was an absolute bar to her recovery, unless it was shown by other evidence that the shot which caused Dempke's death was not fired by him with intent to take his life. Has such evidence been produced? The following facts were established: Deceased was a man of quiet, reserved disposition, with a tendency to melancholy and nervousness. About two years before his death he fell downstairs, receiving serious injuries, causing hemorrhage of the stomach, which trouble continued, in a degree, to the time of his death. He was confined to his house for some time, and was never the same man afterwards. A few weeks before his death he struck his head against an iron ball on a machine he was using, and ever since he was, as plaintiff expressed it, "queer." On February 7, 1900,—the day before his death,—he fell, striking his left hand upon a tack, sustaining a slight injury. He went to a doctor in a state of considerable excitement, expressing a fear of blood poisoning. The doctor dressed his hand, and sought to remove the apprehension of danger by assuring him it would probably be all right. He went home pale and excited, and again expressed to plaintiff fear of blood poisoning. During the night he was restless and sleep-

less, and had plaintiff dress his hand repeatedly. The next day he arose at his usual time, but did not go to work. He ate but little breakfast, and then listened to his wife read a newspaper. About half past nine or ten o'clock, the plaintiff, being engaged in her household work, left the house to get a pail of water, leaving plaintiff sitting on a couch in the dining room. She returned in about two minutes, and found deceased sitting on the floor in the corner of his bedroom, with his back against the wall, his legs outstretched and spread apart, the revolver lying on the floor between his thighs, the muzzle pointing away from him, and his right hand either grasping or covering it. The post-mortem examination showed the bullet had entered Dempke's head about one and one half inches back and one inch above the right eye, passing through the brain in a practically horizontal course, and lodged on the other side of his head. No powder marks were observed either by the doctor, who came soon after the shooting, or by the plaintiff, and it appears that no special examination was made. Dempke's family relations were pleasant, and he was a saving and industrious workman, and fairly prosperous for a man in his station. These are the material facts disclosed by the undisputed testimony. It is not questioned that his death was caused by a bullet from the revolver found on the floor between his legs. The course of the bullet makes it certain that the revolver, when discharged, must have been pointing toward the right temple, and in line with a plane passing through his brain, and irresistibly suggests that it must have been held in deceased's own hand when fired,—a suggestion which is strongly corroborated by the fact that, when found, his right hand either grasped or rested upon the revolver as it laid upon the floor. The position of the body, partially leaning against the wall, is also significant. To us it does not seem that there is a single fact in the case that suggests any other cause of death than suicide. The proofs of death, with the accompanying

circumstances referred to, make the case quite as strong against the plaintiff as in *Agen v. Metropolitan L. Ins. Co.* 105 Wis. 217, 80 N. W. 1020, and *Hart v. Fraternal Alliance,* 108 Wis. 490, 84 N. W. 851, and justify the trial court in its ruling.

*By the Court.*—The judgment is affirmed.

WINSLOW and DODGE, JJ., dissent.