## National Council Junior Order United American Mechanics v. Thompson.

(Decided May 8, 1913.)

### Appeal from Franklin Circuit Court.

1. Intoxicating Liquors—Operation of Saloon by Administrator—Engaged in Business as Agent of Decedent's Estate.—The administrator having continued to run a saloon owned by his decedent, and having renewed the license from year to year in his own

name, he employing all the help and buying all the supplies, is engaged in the liquor business as the agent of his decedent's estate, although he had no interest in the proceeds of the saloon.

2. Insurance, Life—Fraternal Insurance—Estoppel—Notice.— The local lodge having collected assessments in violation of the by-laws of the Order, and when the by-laws provided that such payment for assessments should not be a waiver of the forfeiture, the Order is not estopped to rely on the violation of the by-laws as the members are charged with notice of the by-laws of the Order.

BROWN & NUCHOLS and SMITH W. BENNETT for appellant.

SCOTT & HAMILTON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

William Thompson was a member of the Junior Order of United American Mechanics, a fraternal society which maintains a funeral benefit department. He joined the order on April 16, 1909, and was admitted to the funeral benefit department on November 6, 1909. He died in the year 1911, having paid all his assessments as they fell due. The order refused to pay to his beneficiaries the amount of the funeral benefit, $250, and this suit followed. The company defended the suit on the ground that William Thompson was engaged in the liquor business, and that a person engaged in this business was not eligible for membership in the funeral benefit department. The certificate which was sued on is in these words:

"Junior Order United American Mechanics, will pay to Capital City Council, No. 29, Junior Order United American Mechanics of Frankfort, State of Kentucky, for the legal dependent of, William Thompson within thirty days from the receipt of the proof of his death the sum of Two Hundred and Fifty Dollars ($250) upon the condition that the said Capital City Council No. 29, is now and shall be at the time of the death of the said William Thompson in good standing in the Funeral Benefit Department of the National Council Junior Order United American Mechanics of the United States of North America, that is to say that it has paid all assessments due to the Funeral Benefit Department at the time of the death of the said William Thompson and has complied with all laws, rules and regulations governing the Funeral Benefit Department, and is in good stand-

ing with the National Council and State Council having jurisdiction over said council. Also, upon the further condition that the said William Thompson was not received to membership nor retained as a member in violation of the laws and decisions of the order and that at the time of his death he was a beneficial member in good standing of said Capital City Council No. 29 and entitled to death benefits in accordance with the Constitution and laws of that council and the State and National Council now in force or hereafter adopted prior to said death.''

Section 1 of the By-Laws provides for the creation of a funeral benefit department. Section 2 provides for its government. Section 3 provides:

''The entire beneficial membership of any Council of the Jr. O. U. A. M. in good standing with its State Council and with the National Council shall be entitled to membership in the Funeral Benefit Department, but of the members of any council that may be admitted to membership in. the Funeral Benefit Department only such as possess the qualifications hereinafter provided shall be entitled to benefits thereof.''

Section 4 provides for two classes of membership in the Funeral benefit department. Section 5 regulating application for membership provides:

''Any Council desiring to obtain membership in the Funeral Benefit Department shall make application to the Secretary-Manager upon the blanks furnished for that purpose.''

The blank furnished for that purpose which is set out in the by-law contains the following:

''We hereby agree to make no claim on you for benefits upon the death of any brother who is not in good standing in the Council at the time of his death or who is not entitled to death benefits according to the constitution and by-laws of this Council nor who may be sick or disabled at the time of admission of this Council in the Funeral Benefit Department, nor who is engaged in the liquor business, contrary to the laws of the Order. * * * We hereby agree that no benefits shall be paid where the deceased has been received to membership in violation of the laws and decisions of the Order.''

Section 9 is in these words:

''No person shall be admitted to the Funeral Benefit Department who is engaged in the manufacture or sale of malt, spirituous or vinous liquors as a beverage,

either as proprietor or agent( except bona fide hotel keepers or druggists); and should any member of the Funeral Benefit Department hereafter enter upon the manufacture or sale thereof, in either capacity afore-mentioned, he shall thereby, *ipso facto,* forfeit all rights of membership therein, his certificate shall thereby become null and void and payment of assessments or dues thereafter shall in no manner affect such forfeiture.''

The case was submitted to the circuit court upon the following agreed statements of facts:

''It is agreed between the parties that R. P. Thompson died on the ........ day of..................., and that afterwards William Thompson, plaintiffs' intestate, qualified as his administrator; that at the time of the death of R. P. Thompson, he was the owner of a saloon located in Frankfort, Kentucky, and that said saloon with its fixtures and stock were a part of his personal estate and was turned over to William Thompson, Administrator; that thereafter William Thompson conducted said saloon as a part of the estate of R. P. Thompson, deceased, and as administrator; that he employed all the help about said saloon, bought all supplies therefor, paid for the same, but that he never at any time worked in said saloon or was a bar keeper therein.

''It is agreed that at the time he made application for insurance in the defendant's order he was engaged in said saloon business as above indicated, as Administrator of R. P. Thompson, deceased; that he never owned said saloon himself; nor owned any stock therein; nor did he ever work there; but that at said time and thereafter he bought all the supplies for said saloon; employed and discharged all the help about said place, in the capacity of Administrator of R. P. Thompson, deceased. That after the expiration of the license which had been issued to R. P. Thompson prior to his death, the license was annually renewed in the name of William Thompson.

''It is agreed that the officers and members of Capital City Council No. 29, and the person representing the Capital City Council No. 29, who collected the assessments on said certificate of insurance, knew the connection that William Thompson had with the saloon of R. P. Thompson, deceased, and knew the same at all times when any and all assessments and dues were paid by reason of his being a member of said order; that when said assessments were remitted to the Grand Lodge of

the subordinate lodge, the officers and agents of the subordinate lodge, who remitted, knew that William Thompson was connected with the saloon of R. P. Thompson, as above indicated, but that none of the officers of the National Council Junior United American Mechanics had any actual knowledge of said William Thompson's said connection with the operation of said saloon until after his death. It is agreed that, at the hearing, the by-laws of the Funeral Benefit Department attached to the answer of the National Council may be read in evidence.''

On these facts the circuit court gave judgment in favor of the plaintiffs. The defendant appeals.

The first question to be determined is, was William Thompson engaged in the sale of malt, spirituous or vinous liquors as a beverage, either as a proprietor or agent within the meaning of section 9? It will be observed that by the by-laws no person shall be admitted to the Funeral Benefit Department who is engaged in the manufacture or sale of malt, spirituous or vinous liquors as a beverage, either as proprietor or agent. R. P. Thompson died in March, 1908. William Thompson qualified as his administrator on March 12, 1908. The license under which the saloon was then conducted expired on April 30, 1908, and this license was renewed then and annually thereafter on April 30, 1909, 1910, and 1911. A person to whom another's estate is entrusted by law, may in his official capacity, wind up the estate, and is allowed a reasonable time for so doing; as for instance, the assignee of an insolvent estate, the curator of a decedent's estate and the like; and a distinction may be drawn between acts done by such a person in his official capacity and acts done by him personally. If William Thompson had only taken charge of this saloon as administrator, and had done nothing more than he was authorized to do as administrator, a different question would be presented. But that is not the case. The law conferred upon him no authority as administrator to renew the license annually and to continue running the saloon. The license was not issued to him as administrator. The license was in the name of William Thompson, and William Thompson was, from a legal standpoint, the person who was running the saloon. He was the only person who was authorized by law to conduct it, and was the person who could be held responsible for its proper conduct. It is true he was not

the proprietor of the saloon and he was running it not for his own benefit, but for the benefit of R. P. Thompson's estate, still in so doing he was the agent of the estate and was engaged in the saloon business as the agent of the estate. To hold that a person who conducts a saloon, employs all the help about it, buys all the supplies and pays for them, is not engaged in the sale of spirituous, vinous and malt liquors as a beverage simply because he does not stay in the saloon and sell the liquors himself, would be to ignore the principle of law that he who does a thing by the hand of another, does it himself. If it had only been intended by the by-law to exclude from membership the proprietors of saloons, the words "or agent" are meaningless, and as William Thompson under the agreed facts was engaged in the sale of intoxicants as a beverage, acting as agent for R. P. Thompson's estate, he was not eligible under the by-law to be admitted to the Funeral Benefit Department.

The remaining question is, is the order estopped to make this defense by reason of the fact that the local lodge with full knowledge of all the facts accepted from Thompson his dues and assessments? The authorities on the subject are by no means harmonious. In 29 Cyc. 188-189, the rule is thus stated:

"The society may be estopped from relying on provisions of the contract or by-laws forming a part of the contract by the acts or omissions of officers or agents having authority to act in regard to the subject-matter thereof; and those provisions may likewise be waived. Officers or agents of the society have no power, however, to waive the requirements of its constitution. The society may, by stipulation in its constitution or by-laws or in the contract of membership, limit the power of its officers and agents with reference to estoppel and waiver. In this event the member and the beneficiary are charged with knowledge of the limitation and are bound thereby so that neither may rely on acts of officers or agents which might otherwise create an estoppel or amount to a waiver.

"Inferior lodges and their officers and agents are generally held to be the agents of the society, and hence they may, by acts or omissions founding an estoppel or waiver, preclude the society from relying on grounds of avoidance or forfeiture. To create an estoppel or waiver as against the society, however, they must have

acted as its agent, and within the scope of their authority as such.''

In 2 Bacon on Benefit Societies, 3rd. edition, section 434, the author after a comparison of the conflicting decisions on the subject, thus states his conclusion:

''Upon principle it would seem that members of a benefit society being presumed to know its laws, cannot excuse their failure to comply with those laws, on the ground of the omissions or acts of other members, selected for officers, because, as all know the limitations of authority imposed by such by-laws on the officers, the members cannot be misled or claim want of knowledge. It is an elemental rule that where the means of knowledge are equal there can be no estoppel, nor can estoppel exist without some act of the party estopped misleading the other to his disadvantage.''

It will be observed that by the certificate which is the basis of the action, the Junior Order United American Mechanics agrees to pay the local lodge the sum of $250 for the legal dependent of William Thompson upon the condition that William Thompson was not received to membership nor retained as a member in violation of the laws and decrees of the order. It will also be observed that Thompson was admitted to the Funeral Benefit Department upon application of the local lodge, and that in this application the lodge agreed to make no claim on the Order for benefits upon the death of any brother who is engaged in the liquor business contrary to the laws of the order, and that no benefits shall be paid where the deceased has been received to membership in violation of the laws of the Order. It will also be observed that by section 9 of the by-laws no person who is engaged in the business of selling liquor is eligible to membership, and if he engages in it, this shall *ipso facto* forfeit all rights of membership, and that the payment of assessments or dues shall in no manner affect such forfeiture. These provisions clearly limit the authority of the local lodge. As we understand the quotation above made from 29 Cyc., and the rule as quoted from Bacon on Benefit Societies, whether or not the Order is affected by the conduct of the local lodge depends upon whether or not the local lodge acted within the apparent scope of its authority. Where the agent exceeds the scope of his apparent authority, and this want of authority is known to the person dealing with him, the principal is not bound. We see no reason why this rule should not apply,

as between an Order and the local lodge, where by the by-laws of the Order, the powers of the local lodge are circumscribed and the act which is done is beyond the scope of the authority conferred upon the local lodge by the by-laws. It seems to us sound to require the members of a fraternal society to take notice of the laws of the Order, and when they know the local lodge is exceeding its authority, there seems to be no sufficient reason for holding the Order bound by the acts of the local lodge; for if this is permitted, the members of the local lodge may by ignoring the rules of the Order, pursuant to an agreement among themselves, defeat the purposes for which the Order was intended. In Voelkell v. Supreme Tent, 116 Wis., 202, the dues of a member were paid four days after his death, and after it was claimed he had committed suicide. The plaintiff in that case relied upon an estoppel by reason of the conduct of the subordinate tent. The court said:

"As to the question of receiving the money after death of insured, section 233 and 234 of defendant's rules provide that the subordinate tent is the agent of its members in collecting and transmitting dues and assessments, and that the supreme tent should not be liable for any negligence, or bound by any illegal action or irregularity, of such subordinate tent. Under the facts stated and the rules noted, the reception of the money by the collector, if irregular, was an error of the plaintiff's own agent, which she cannot now take advantage of."

In Driscoll v. Modern Brotherhood, 77 Neb., 282, the dues had been assessed contrary to the laws of the Order, and there, as here, it was insisted that the waiver by the local lodge estopped the Order. Holding that the Order was not bound, the court said:

"The association is a corporation and, consequently, can act only through its officers or agents. Such officers or agents may bind it while acting within the scope of their authority, but not beyond. The authority of each is defined and limited by the constitution of the association which is a part of the contract upon which the plaintiff seeks to recover. He is therefore chargeable with notice of such limitations and no question of ostensible authority arises."

In Coughlin v. Knights of Columbus, 79 Conn., 218, the member did not pay his dues in time, and the local lodge afterwards accepted them according to a custom of its own which was contrary to the rules of the Order.

It was held that although the local lodge had long been doing this, the Order was not bound. The court said:

"The officers of this defendant corporation, in dealing with Coughlin and other life insurance-members, were all acting as special agents under a special authority, the precise limits of which were known to all members, and their acts alleged in the reply were in excess of this authority and cannot operate to prevent the defendant, either by waiver or estoppel, from maintaining its defense to this action as stated in its answer."

A number of other authorities to the same effect are collected in those above cited. It is true there are some cases holding to the contrary; but it will be found that in most of them the decision of the court turned upon the authority of the local lodge under the by-laws of the Order. Thus in Modern Woodmen v. Breckenridge, 89 Pac., 661, 10 L. R. A. N. S., 136, the local lodge which had the power to discipline and expel a member, allowed him to remain a member of the lodge with knowledge of his bad habits. The Order was held estopped by the conduct of the local lodge. But there the local lodge had power to pass on the question, and its action in a matter within its jurisdiction, was under the authorities above cited, binding on the Order.

The cases of Fraternal Aid Association v. Powers, 67 Kans., 420, Modern Woodmen v. Coleman, 68 Neb., 660, High Court L. O. v. Schweitzer, 171 Ill., 325, Order of Columbus v. Fuqua, 60 S. W., 1020, which are relied on by appellee all turn on the same ground. The conflict of authority on the question is more apparent than real, due to general expressions in some of the opinions which have been applied in a few others. In the case at bar the promise of the Order is to pay the money to the local lodge upon a condition that is broken, and in the application for membership it is stipulated that no claim will be made on the Order if this condition is broken, and it is further stipulated in the by-law that the payment of assessments and dues to the local lodge shall not waive the forfeiture if the member is engaged in the saloon business. The language used is so plain as to leave no room for construction. The power of the local lodge was expressly limited. The members of one of these fraternal societies are all equally bound by the by-laws of the Order; and it is an elementary rule that no one shall profit by his own wrong. If all the members of a local lodge should agree together to disregard a by-

law of the Order, this would be a wrong, and no one of them can be allowed as against the Order, to profit by this wrong and assert against the Order a claim which he could not otherwise have asserted. We, therefore, conclude that on the agreed facts there should be no recovery on the certificate.

Judgment reversed and cause remanded for further proceedings consistent herewith. The assessments paid by Wm. Thompson on his certificate may be recovered.