WATKINS *v.* METROPOLITAN LIFE INSURANCE COMPANY.

Opinion delivered April 23, 1923.

1.  EVIDENCE—ADMISSION AGAINST INTEREST.—In an action on a life insurance policy in which defendant relies upon exemption from liability for self-inflicted death as a defense, it may be shown in evidence that in regard to another policy plaintiff in the proof of death admitted that insured committed suicide, but such admission is not conclusive, and is susceptible of explanation as to the manner of its execution, and what was actually said and done in connection therewith.

2.  TRIAL—SINGLING OUT EVIDENCE.—It was not error to refuse to single out a particular piece of evidence and to comment upon its probative force.

3.  EVIDENCE—OPINION OF WITNESS—FOUNDATION.—It was not error to refuse to permit a witness to state his opinion as to whether a straight line drawn from the drawer of a dresser to where a bullet entered the ceiling would pass through insured's head, in the absence of any proof as to the position in which insured was standing, nor the attitude of his body.

4.  TRIAL—ARGUMENTATIVE INSTRUCTION.—It was not error to refuse to give a requested instruction that was argumentative in form, or that was covered by instructions given.

Appeal from Jefferson Circuit Court; *W. B. Sorrels,* Judge; affirmed.

*Danaher & Danaher,* for appellant.

The court erred in permitting the written statement, signed by appellant, of the cause of death, to be introduced by witness Lee, and in failing to instruct the jury properly in regard thereto, as stated in appellant's requested instruction No. 8.  81 Ark. 205; 79 Ark. 315. Also in refusing to allow witness Stowell to answer the hypothetical question as to where the bullet would hit the ceiling.  22 C. J. 553; 59 Ark. 140-3; 100 Ark. 232; 62 Ark. 254.  Erred in refusing to give appellant's requested instruction No. 5 as to presumption against suicide.  80 Ark. 195; 128 Ark. 160; 131 Ark. 419; 146 Ark. 70.  Requested instruction No. 6 was also the law, and the court should not have given appellee's instruction numbered 2.

*Coleman & Gantt,* for appellee.

Case involves substantially same facts as in 152 Ark. 12, the facts showing suicide of the assured being more fully developed herein.  No error in admitting written statement of appellant as to cause of insured's death.  37 Ark. 580; 80 Ark. 419; 93 Ark. 209.  Admission against interest.  84 N. W. (Wis.) 851; 92 N. W. (Wis.) 1104; 44 N. E. (N. Y.) 1099; 22 Wall. 32, L. ed. 793.  Precise question passed on in 152 Ark. 12; 71 Ark. 185; 70 Ark. 512; 2 Jones on Evidence, § 296.  Objection being withdrawn, appellant cannot complain that no instruction regarding it was given.  37 Ark. 580.  No question of estoppel involved in any event.  151 Ark. 231; 2 Jones, Comm. on Evidence, § 280; 89 Ark. 349. Cases cited by appellant not in point, and reason for rule announced therein explained in 52 Ark. 11; 14 R. C. L. 1166.  No error in refusing to allow witness to answer hypothetical question.  2 Jones, Evidence, chapter 12, § 360.  Appellant's requested instruction 5 was asked and refused in 152 Ark. 12, and it was virtually covered by instructions given.  Presumption against suicide only exists in absence of evidence.  No error committed in giv-

ing or refusing instructions, and No. 2, given at appellee's request, was given in Watkins case *supra.* Judgment should be affirmed.

WOOD, J. This action was instituted by the appellant against the appellee. The appellant alleged that Carl F. Watkins was insured by the appellee on January 16, 1920, in a policy for $1,000, and also an additional $1,000 in case death should result from violent, external, or accidental means; that appellant was the beneficiary in the policy; that Carl F. Watkins died on September 20, 1920, from injuries received through violent, external and accidental means. Appellant prayed for judgment in the sum of $2,000.

The answer admitted the issuance of the policy by the appellee, but denied that Watkins died as the result of injuries received through external, violent, and accidental means, and alleged that his death was the result of suicide. Appellee set up in defense the following clause in the policy: "If the insured, within one year from the issue hereof, die by his own hand or act, whether sane or insane, this policy shall become null and void, and the company will return only the premiums which have been received thereunder." And a further provision, which, in part, is as follows: "This indemnity shall not be payable if the death of the insured results directly or indirectly from disease or from bodily or mental infirmity, or from self-destruction, whether sane or insane * * *." The appellant introduced the policy by the terms of which appellee insured the life of Carl F. Watkins in the sum of $1,000, payable at his death, and in the event death should be caused by violent, external and accidental means, an additional $1,000. The policy contained the clauses above set forth.

The appellant testified that she was the mother of Carl F. Watkins. On the day of his death he came home about 11 o'clock, and sat in the dining room until lunch time. He was very nervous and his face flushed. She asked him if he wanted her to call a doctor, and he

answered "No," that he would be all right in a few minutes. He lay down for a while, and got up and went to his room. Witness heard a shot, and pushed the door open and saw her son staggering, in the act of falling. She put her arms around him and eased him to the floor. He never spoke a word after the accident. He was standing in front of the bureau, facing the same, and the drawer was open. The pistol was in his right hand when witness got to him. She didn't know how he was holding it. Witness further testified that he became engaged in August, and in September following ascertained that the girl to whom he was engaged had been married. He wrote her about it, and she replied. They kept up a correspondence. He was cheerful and happy, and witness noticed no change in him after he learned that the girl had been married. It was arranged between them that she was to come over Christmas and they were to be married in January.

The family physician, called on the day of Watkins' death, testified that when he reached the home he found Watkins dead. The body was lying between the bed and dresser. He found the cause of his death was a bullet wound which showed that the bullet entered his head a little in front of and above the ear and came out on the other side of his head. The bullet came out about an inch and a half higher than the point of entrance. Witness saw the pistol, said to be the cause of his death, lying some ten or fifteen inches from the body. It had one chamber fired. There was further proof to the effect that the bed appeared as though some one had been lying on it, and there were powder burns on the head of Watkins. The pistol lying near his body was a .38 Smith & Wesson, which had been recently fired.

There was testimony on behalf of the appellee tending to show that, on the morning of the day that Watkins died, he was working at the Saline River Hardwood Company. The superintendent of the plant under whom

Carl worked stated that about 9:30 o'clock he observed that Carl did not look natural, and stated that he was not feeling well. He seemed to be laboring under a heavy mental strain. Watkins started home, and witness walked with him about eight or ten blocks, when Carl stopped and said, "This is far enough." He was mumbling and talking, and there were tears dropping off of his cheeks. Witness asked him what was the trouble, and he replied, "Well, she isn't what I thought she was." Witness thought it was a lover's quarrel, and told Carl not to get discouraged, that everything would come out all right. Witness tried to get him to go back to the mill, but he said, "No, I am going home and tell father and mother. I never keep anything from them. Whatever I do, I know it is with a clear conscience. I have got to choose between three points. I have got to forsake my mother and my God and stay with this girl, or I have got to forsake this girl." Witness forgot what the other point was. During their conversation witness asked Watkins if he had any evidence that the girl referred to wasn't what she should be, and he replied, "Yes, she has been married and never gotten a divorce." Witness didn't know whether that was all the trouble or not. Witness didn't know whether they were engaged to be married or not. Watkins further told witness that his religion didn't permit him to marry a girl with a living husband. Watkins was one of the best boys witness ever knew. He belonged to the Episcopal Church, and witness believed that he was a Christian.

Another witness testified of Watkins' despondency on the morning previous to his death the same day.

Witness Lee testified that he was assistant manager of the appellee at Pine Bluff. The appellant came to his office to make out a death claim on an industrial policy, and witness talked with her about it. She told witness that she didn't see her son shoot himself, but when she heard the shot she went to his room and got to him in time to lay him down on the floor. Witness intro-

duced a statement which was made out by him and contained, among other things, the following: "5th: Cause of death—Suicide." The statement was signed by the appellant. Witness wrote the word "suicide," but didn't remember whether she told witness to say that or not. Witness didn't know whether he wrote the word from anything that appellant said or just from an assumption on witness' part. The manner of Watkins' death had no effect on the industrial policy which witness had under consideration, but witness knew that the policy sued on was outstanding at that time.

Witnesses on behalf of appellant testified in rebuttal that the bullet entered Watkins' head about an inch in front of the ear and came out in the part of his hair on the other side of his head. There were no powder burns on his head. Witnesses also testified concerning the location of the furniture and Watkins' body when he was discovered. One of these witnesses, Dr. Stowall, rector of the Episcopal Church, testified that there was about two feet space between Watkins' feet and the little dresser, his feet pointing toward it, indicating that he had been standing in front of the dresser. The two lower drawers of the dresser were shut, and the upper drawer open about six inches. The dresser was about two and a half feet high. Witness saw a hole in the ceiling where the paper had been punctured and the wood splintered about a half foot from the west wall and seven or eight feet from the north wall. Witness was asked the following question: "If one were reaching in that drawer standing in front of it, where would a straight line from that drawer and through the head of a person standing there hit on the ceiling with reference to where this hole was in the ceiling that you saw?" The court sustained the appellee's objection to the question, ruling that the appellant would first have to show that Watkins was standing in a particular position before the appellant could show that a straight line drawn from the dresser drawer to where the bullet entered

the ceiling would pass through a man's head. The attorney for the appellant announced that such proof would be made. The court ruled that appellant had better make that proof first, which would make the testimony admissible. Appellant excepted to the ruling of the court.

The appellant introduced letters and a telegram from Watkins' fiancee, tending to show her tender affection for him. Mrs. Watkins also testified in rebuttal that Mr. Lee wrote the paper signed by her which he introduced in evidence. He didn't write it like witness told him to. She didn't tell him it was suicide. Witness told him how it happened, and he wrote "suicide" of his own motion. Witness signed the paper after Mr. Lee wrote it, without looking it over.

The court instructed the jury, at the instance of the appellant, in instructions 2, 3 and 4, to the effect that the burden was upon the appellee to establish by preponderance of the evidence that Watkins committed suicide; that if the jury believed from the evidence that Watkins came to his death as a result of a pistol shot accidentally fired by himself, they should find for the appellant; that the word "self-destruction," as used in the policies in evidence, means "intentional self-destruction," and must not be construed to include death by accident or mistake.

Among other instructions, the appellant requested the following:

"5. If you find from the evidence that deceased was found with pistol-shot wound in his head, which caused his immediate death, this makes a *prima facie* case for the plaintiff, because the law presumes that one does not commit suicide, even where the wound is self-inflicted. Such presumption of evidence stands until overthrown by evidence that deceased intentionally shot himself."

"6. If you find from the evidence that Carl Watkins shot himself accidentally, your verdict will be for

the plaintiff, even though you may believe that he was insane at the time."

"8.  If you find from the evidence that, at the time of making the claim for insurance which was introduced in evidence by the witness Lee, the plaintiff made correct answers to the questions propounded to her by Lee, the defendant's agent, but, without her knowledge, said agent wrote down incorrect answers, or different answers from those given by the witness, the insurance company is estopped to take advantage of the wrong of its own agent, and the false answer so written does not bind the plaintiff in any manner."

At the request of the appellee, the court gave the following instruction:

"2.  If you find from a preponderance of the evidence that the deceased shot himself for the purpose of self-destruction, then you are instructed that this was not a risk assumed by the defendant company in its policy, and you should find for the defendant, even though you should further find from the evidence that the deceased, at the time he shot himself, was not in his right mind and did not understand the moral character or the nature and consequences of the act he was about to commit."

On its own motion, the court instructed the jury as follows:

"3.  If you find from a preponderance of the evidence that the deceased intentionally killed himself, you will find for the defendant.  If you find from the evidence that the deceased did not intentionally kill himself, you will find for the plaintiff."

"4.  In explanation of that instruction, if he purposely and intentionally killed himself, then the defendant on that account is entitled to a verdict, though it may appear that he was insane at the time he intentionally killed himself."

The jury returned a verdict in favor of the appellee.  Judgment was entered in its favor, from which is this appeal.

1.   The appellant contends that the court erred in permitting the statement, written by witness Lee and signed by the appellant, to be introduced in evidence, and in failing to give appellant's prayer for instruction No. 8 in connection with the written statement. It appears from the testimony of Lee that Mrs. Watkins was the beneficiary in what is called an "industrial" policy issued by the appellee, and that it did not contain a provision against suicide; that was a different policy from the one on which the present suit is based. Mrs. Watkins called at Lee's office, in connection with the policy, to prove the death of the insured, in accordance with the requirements of the company. The agent filled out one of the forms prepared by the company for proof of death. Mrs. Watkins, according to her own testimony, related the facts as she knew them concerning the death of Watkins, and Lee did the writing. She didn't tell him it was suicide, and he didn't write it down as she told him. He wrote the word "suicide" in the statement on his own motion, and she signed the paper without reading it over. Lee testified that he wrote the word "suicide" in the statement, and didn't remember whether appellant told him to say that or not. He didn't remember whether he wrote the word from anything that she said, or just from an assumption on his part from the facts as related by her.

The court, over the objection of appellant, first held that the testimony was admissible. Afterwards the court, upon further examination of the witness, changed its ruling and offered to exclude the statement. Counsel for appellant thereupon withdrew his objection to the evidence, and the court permitted the statement to remain in evidence for the consideration of the jury. The court did not err in admitting the statement concerning the proof of death. Although the statement was made pertaining to a different policy from that involved in this action, nevertheless it was competent testimony, and was relevant to the issue being tried. The appellant was con-

tending in the present case that the death of her son was not the result of suicide, that is, an intentional self-destruction. If she, at any time, in making proof of death, by word or act admitted that his death was suicide, then proof of such words or acts would be competent testimony in this case as admissions against her interest. *Shinn* v. *Tucker,* 37 Ark. 580-592; *W. O. W.* v. *Jackson,* 80 Ark. 419; *St. L. I. M. & So. Ry. Co.* v. *Dallas,* 93 Ark. 209.

In *Watkins* v. *Reliance Insurance Co.,* 152 Ark. 12, the action was based on policies issued by the Reliance Insurance Company on the life of Watkins in favor of his mother. Mrs. Watkins, the appellant here, was the beneficiary under those policies, and her son, Carl, was the insured. One of the defenses there was suicide under a similar provision of the policy here under consideration. In that case we said: "To be sure, if Mrs. Watkins, when making proof of the death of her son, had done or said anything to warrant the conclusion that she was not then contending that the death was accidental, but, on the contrary, had by her words or acts at that time admitted or declared that the death was by suicide, then it would be competent to show what those acts and declarations were. Because, under such circumstances, her acts and declarations would be relevant, as in the nature of admissions against interest and contrary to her contention at the trial."

The principle there announced is applicable here, and, under it, the statement and the testimony of Lee and Mrs. Watkins concerning the manner of its execution were all relevant to the issue as to whether or not the death of Watkins was suicide. The appellant admitted that she signed the instrument, which, upon its face, showed that it was a proof of death by suicide. This rendered the instrument competent as testimony in the nature of admission against interest, but it was only *prima facie,* and not conclusive of the purported facts recited therein. It was not contractual in its na-

ture, and was therefore susceptible of explanation as to the manner of its execution and what was actually said and done in connection therewith  The instrument was merely a piece of evidence relative to the issue of suicide.  See *Hart* v. *Fraternal Alliance,* 84 N. W. 851; *Mutual Benefit Life Ins. Co.* v. *Newton,* 22 Wallace 32; *Voelkel* v. *Maccabees,* 92 N. W. 1104; *Hannan* v. *Conn. Mutual Life Ins. Co.,* 44 N. E. 1099.

The testimony of Lee, as well as the testimony of the appellant admitting that she signed the statement, rendered the same competent and admissible as evidence. The weight to be given to it under their testimony was for the jury.  2 Jones, Comm. on Evidence, § 296. Since the statement was competent and relevant as evidence, the doctrine of estoppel could not be invoked by the appellant to prevent the appellee from introducing it.  See *Sov. Camp W. O. W.* v. *Richardson,* 151 Ark. 231. Nor would the court be justified in singling out this piece of evidence and commenting upon its probative force. *Jenkins* v. *Quick,* 105 Ark. 467; *Fowler* v. *State,* 130 Ark. 365.  There was no error therefore in refusing to grant appellant's prayer for instruction No. 8.

2.    There was no error in refusing to permit the witness Stowall to answer the question propounded to him by appellant's counsel at the time the question was asked. There had been no testimony at that time tending to prove the exact location where Watkins was standing in front of the dresser drawer, nor the attitude of his body, whether straight or stooped.  The court ruled that it was necessary to lay this foundation by showing the particular position in which Watkins was standing before there could be an answer to the hypothetical question.  This ruling was correct.  Without being able to state the facts upon which the answer was based, the answer itself would have been but the baldest speculation—mere opinion evidence, without any foundation of fact on which to base it.  2 Jones, Comm. on Evidence, chap. 12; also § 360.

The testimony of Mrs. Watkins, afterwards introduced, tended to prove that Watkins, at the time he was shot, was standing in front of the bureau facing the same, but appellant, after this testimony, didn't renew or offer to renew the question. Therefore, appellant cannot complain because the hypothetical question asked witness Stowall was not answered.

3. The court did not err in refusing appellant's prayer for instruction No. 5. While this instruction embodied principles of law announced in the case of *Grand Lodge* v. *Bannister,* 80 Ark. 195; *Ætna Life Ins. Co.* v. *Taylor,* 128 Ark. 160; *Bus. Men's Assn.* v. *Cowden,* 131 Ark. 419; and *Ætna Life Ins. Co.* v. *Little,* 146 Ark. 70, nevertheless the instruction was argumentative in form. Furthermore, the appellant could not have been prejudiced by the refusal to give the prayer, because the court, in instructions 2, 3 and 4, given at the instance of the appellee, had correctly covered all the law embraced in appellant's prayer No. 5. The court likewise did not err in refusing appellant's prayer for instruction No. 6. The proposition of law embraced in this instruction was fully covered in appellant's prayer for instruction No. 2, which the court gave, and instruction No. 3, given on the court's own motion. The appellee's prayer for instruction No. 2, which the court gave, was not happily worded, but no specific objection was made to its phraseology, and we are convinced that, when taken in connection with instructions Nos. 3 and 4, given on the court's own motion, and appellant's prayers Nos. 2 and 4, which the court gave, there was no prejudicial error to appellant in giving appellee's prayer for instruction No. 2.

After carefully reviewing the charge of the court as a whole, we conclude that the law was correctly declared in substantial conformity with numerous decisions of this court. See *Watkins* v. *Reliance Ins. Co., supra,* and cases there cited; also the more recent cases of *N. Y.*

*Life Ins. Co.* v. *Watters,* 154 Ark. 569; *Grand Lodge A. O. U. W.* v. *Mode,* 157 Ark. 62; *Mott* v. *Sov. Camp W. O. W.,* 155 Ark. 259.

The judgment is correct, and it is therefore affirmed.