METROPOLITAN LIFE INSURANCE CO. *v.* DABUDKA.

1. EVIDENCE—INSURANCE—ADMISSIONS — PROOFS OF DEATH — EXPLANATION.

    Proofs of death are to be treated as evidence of the facts stated in them, being in the nature of admissions, but subject, however, to such explanation as the beneficiary may offer.[1]

2. WITNESSES—PRIVILEGE—PHYSICIANS AND SURGEONS.

    An affidavit of a doctor, secured by the insurer, containing facts which the doctor could not have testified to under 3 Comp. Laws 1915, § 12550, had he been a witness, which was attached to the proofs of death when submitted by the insurer to the beneficiary for his signature without explaining to him the contents of said affidavit, was not competent proof that insured made misrepresentations in securing the insurance.[2]

3. EVIDENCE—INSURANCE—TAKING ADVANTAGE OF BENEFICIARY.

    An insurance company may not lull a beneficiary into security by indorsing a statement on the policy that the employment of an attorney is not necessary to collect the insurance, and then take advantage of him by securing his signature to proofs of death containing admissions not otherwise admissible.[3]

4. SAME—HOSPITAL RECORDS INADMISSIBLE WHERE NOT PROPERLY IDENTIFIED.

    Hospital records of a patient in the hands of a witness who did not make them and who had no personal knowledge as to who did make them, were inadmissible in evidence, in the absence of a statute permitting such records to be used as original evidence.[4]

Appeal from Wayne; Lajoie (Ernest P.), J.    Submitted June 5, 1925.    (Docket No. 52.)    Decided July 16, 1925.    Rehearing denied October 1, 1925.

Bill by the Metropolitan Life Insurance Company

[1]Evidence, 22 C. J. § 344; Life Insurance, 37 C. J. § 158 (Anno); [2]Witnesses, 40 Cyc. p. 2403 (Anno); [3]Life Insurance, 37 C. J. § 158 (Anno); [4]Evidence, 22 C. J. § 1100.

On conclusiveness of proof of loss as against insured or his beneficiaries, see note in 44 L. R. A. 846.

As to what constitutes a consultation with, or attendance by, a physician, within the meaning of an application for life insurance, see note in 18 L. R. A. (N. S.) 362.

against Nick Dabudka (Dabudek) for the cancellation
of a policy of insurance on the ground of fraud.    From
a decree dismissing the bill, plaintiff appeals.    Affirmed.

*Campbell, Bulkley & Ledyard* (*Edward P. Wright,*
of counsel), for plaintiff.

*Samuel Shapero* (*Harold M. Shapero,* of counsel),
for defendant.

SHARPE, J.     Anna Dabudka, wife of defendant,
made application to the plaintiff for insurance on her
life, in the sum of $500, on April 8, 1918.     Pursuant thereto, a policy was issued on April 24th, and
delivered to her.     The defendant was named as
beneficiary therein.     The insured died on October 31,
1918.     Proofs of death were furnished.     Plaintiff
refused to pay.     Defendant brought suit to recover.
Plaintiff thereupon filed the bill in this case, praying
for the cancellation of the policy on the ground of
fraud, concealment and misrepresentation of material
facts on the part of the insured in her application.
The trial court entered a decree dismissing the bill,
from which plaintiff appeals.

The application was signed by the insured by her
mark.    A copy of it was attached to the policy when
delivered.    It is not claimed that any false statement
was made in the application as signed by her.    Attached to and made a part of it were certain statements purported to have been made by her to plaintiff's
medical examiner, Dr. McKinley.    This was also
signed by her by mark, the doctor signing his name
as a witness thereto.    These statements were in answer to questions put to her by the doctor.    These
questions and answers contained statements that she
had not theretofore been attended by a physician, and
had never been under treatment in any hospital.    To

maintain its case, plaintiff offered a certified copy of the death certificate, signed by Dr. Sherwood, who attended deceased "from Oct. 27, 1918, to Oct. 27, 1918," in which the cause of death was stated to be "dilated heart and influenza." Plaintiff's counsel offered in evidence a paper, headed "Attending Physician's Statement," signed by Dr. C. E. Watson, which was received over the objection of defendant. This statement was made on a blank prepared by the plaintiff. Preceding it, on the same page, was a "Declaration Made by Claimant," and signed by defendant as follows:

"I desire to file the following statement by attending physician with and as part of the proofs of death submitted by me to your company on account of policy No. 2483707-C."

It was dated December 10, 1918. In this statement appeared certain questions and answers, written by the doctor, stating that he had treated the deceased in October, 1917, for "bronchial asthma and valvular heart trouble and dropsy." Plaintiff's assistant manager, Mr. Bozyk, testified that the company furnished blanks for proof of death to defendant. These were filled out and delivered to him. They do not appear in the record, but it may be inferred that one of them was a certified copy of the "Medical Certificate of Death" signed by Dr. Sherwood, above referred to. The only provision in the policy relative to such proof was the undertaking of the company to pay to the beneficiary the sum of five hundred dollars "upon receipt at the home office of the company in the city of New York of due proof of the death of Anna Dabudka." There is no suggestion that the proof furnished by the defendant did not fully comply with this requirement.

The manner in which the affidavit of Dr. Watson was secured is testified to by Mr. Bozyk as follows:

"*Q.* When the claimant, Nicholas Dabudka, made this claim to your ·office after the death of his wife, you gave him that slip to fill out, didn't you?

"*A.* No, I took that to the doctor personally.

"*Q.* Who furnished you with the name of the doctor?

"*A.* Well, I got that by investigating in the neighborhood. I got that, I think, from Dr. Sherwood. He thought there was other doctors attending her.

"*Q.* Well, Dr. Sherwood made the statement there were no other doctors to his knowledge?

"*A.* He wasn't sure, but he thought there was. When he told me that I inquired in the neighborhood and I found that there was this doctor attended her, so I called on this doctor and he completed the statement. After it was completed I took it to the claimant and he signed it.

"*Q.* Then the information of the doctor was on there at the time the claimant signed?

"*A.* Yes.

"*Q.* Did the claimant know it was information?

"*A.* I told him it was information from the doctor.

"*Q.* He didn't try to conceal it, did he?

"*A.* No."

This court has decided that proofs of death are to be treated as evidence of the facts stated in them, being in the nature of an admission (*John Hancock Mut. Life Ins. Co.* v. *Dick,* 117 Mich. 518 [44 L. R. A. 846]), subject, however, to such explanation as the beneficiary may offer. *Hubbell* v. *North American Union,* 230 Mich. 668.

In our opinion, the affidavit of Dr. Watson, procured in the manner above set forth, was not such a part of the proofs of death furnished by the beneficiary as entitled it to be treated as evidence within the rule above stated. It was not furnished voluntarily by the defendant. It was not read over by him, or to him, before he signed the declaration which preceded it. Had the affidavit not been procured, and had Dr. Watson been called as a witness, he would not have been permitted to testify to the facts therein stated, upon which plaintiff relies to establish misrepresenta-

tion.   3 Comp. Laws 1915, § 12550; *Gilchrist* v. *Mystic Workers*, 188 Mich. 466 (Ann. Cas. 1918C, 757). In the *Gilchrist Case*, a waiver of the statute, contained in the application for insurance, was held to be against public policy and void.   A somewhat similar statement was considered and held not to be competent proof in *Repala* v. *Insurance Co.*, 229 Mich. 463.

In a "Notice to Policyholder," indorsed on the policy, it is said:

"It is not necessary to employ an attorney or any other person to collect the insurance under this policy, or to secure any of the benefits it provides."

A beneficiary may not thereby be lulled into security and advantage taken of his legal rights by the course here pursued to secure evidence on behalf of the company not otherwise admissible.

Helen Wheelock, record clerk at the Harper hospital, was called as a witness.   She was handed "a group of papers," which she testified were "records of this case of Mrs. Anna Dabudka."   None of the entries on the exhibit were made by the witness, nor did she have any personal knowledge as to who made them. The record showed that "Mrs. Nicholas Dabudka (Anna)," residence, "93 Mercier street," entered the hospital on February 23, 1918, and was discharged March 11, 1918.   We have no statute permitting such records to be used as original evidence.   The witness had no personal knowledge relative to them.   There was no showing that the person who made them, or that the doctor or other person who directed the entries to be made, might not have been produced as a witness.   There was no proof that they were records made in the ordinary course of the business conducted by the hospital by a person whose duty it was to make them.   The admissibility of such proof is discussed at length in *Delaney* v. *Power Co.*, 202 Mass. 359 (88 N. E. 773).   See, also, 22 C. J. p. 902, and cases

cited in footnote.    Even if we should apply the familiar "shop work rule" to such records, it is clear that under the proofs here submitted they were not admissible as evidence.

The record is barren of any competent proof tending to support the allegations of fraud and misrepresentation.

The decree is affirmed, with costs to appellee.

McDONALD, C. J., and CLARK, BIRD, STEERE, FELLOWS, and WIEST, JJ., concurred.    MOORE, J., did not sit.