# ANNE ELNESS v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

November 24, 1933.

No. 29,474.

[1]Reported in 251 N. W. 183.

*Shearer, Byard & Trogner* and *David Shearer,* for appellant.

*E. H. Nicholas,* for respondent.

DIBELL, *Justice.*

Action on an insurance policy of $1,000 issued by the defendant on the life of Emmett A. Elness. The plaintiff, his wife, was the beneficiary. The policy, in addition to insurance on life, promised the insured disability benefits. The plaintiff sought a recovery of them. Before the close of the testimony, conceiving that disability benefits could not be recovered by her and that the cause of action therefor was in the personal representative of the deceased, she withdrew her claim for them. There was a verdict for $1,000 and interest for the plaintiff. The defendant appeals from an order denying its motion for a new trial.

The questions presented involve these points:

(1) The effect of the provision of 1 Mason Minn. St. 1927, § 3396, that when a life insurance policy is issued without a medical examination it is not avoided because of false representations unless they are wilfully false or intentionally misleading.

(2) Whether the statements made by the insured in his application as to prior illnesses and attendance of physicians and as to his health were as a matter of law wilfully false and intentionally misleading and so avoided the policy.

(3) The effect as admissions by the beneficiary of statements of physicians furnished by the beneficiary to the insurer as a part of the proofs of death.

(4) The effect of statements in the proof of loss submitted by the insured on his claim for disability benefits as admissions of the beneficiary.

(5) The effect of the exclusion of a physician's statement, the facts stated not being disputed or being otherwise substantially proved.

1. Emmett A. Elness applied to the defendant for insurance on February 23, 1931. There was no medical examination. The policy was based upon the application of the insured of which written declarations in lieu of a medical examination were attached and were a part. It was issued on February 24, 1931, for $1,000. The plaintiff, Anne Elness, his wife, was the beneficiary. The policy provided that the insured might change the beneficiary. The deceased died December 11, 1931, of Hodgkin's disease.

1 Mason Minn. St. 1927, § 3370, provides:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

1 Mason Minn. St. 1927, § 3396, provides:

"In any claim upon a policy issued in this state without previous medical examination, or without the knowledge or consent of the insured, or, in case of a minor, without the consent of his parent, guardian, or other person having his legal custody, the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless wilfully false or intentionally misleading."

We have adopted, construing § 3370, and following approved authorities, the harsh rule that if a material representation increases the risk of loss the policy is avoided regardless of an innocent intent with which the representation was made. Laury v. N. W. Mut. L. Ins. Co. 180 Minn. 205, 230 N. W. 648, 231 N. W. 824; Iblings v. Phoenix Mut. L. Ins. Co. 172 Minn. 341, 215 N. W. 429; Johnson v. National L. Ins. Co. 123 Minn. 453, 144 N. W. 218, Ann. Cas. 1915A, 458.

In McAlpine v. Fidelity & Cas. Co. 134 Minn. 192, 158 N. W. 967, where the origin of nonmedical examination policies was traced, it was held that § 3396 did not apply to accident policies; and in Hafner v. Prudential Ins. Co. 188 Minn. 481, 247 N. W. 576, § 3396

and not § 3370 was held to apply to a policy such as the one before us. This is the settled law of the state.

■ In his declarations in lieu of a medical examination, which was a part of his application for a policy, the insured answered as follows questions put to him:

"17. Have you ever

"a. Had a serious illness? No.

"b. Received a severe injury? No.

"c. Had a surgical operation? Yes.

"d. Had medical or surgical treatment in a hospital or sanitarium? Yes.

"If yes, medical or surgical? Surgical.

"e. Do the answers to questions 17a, b, c, and f constitute a complete statement of all the severe illnesses, surgical operations and hospital or sanitarium treatments which you have ever had? Yes.

"f. Give date, full history, nature of illness, time disabled, and results. April 1930 removing tonsils. 1 week.

"18. If you are now insured in this or any other company, under an ordinary policy issued without medical report, give name of company and amount of policy or policies. None.

"19. Are you now in good health? Yes.

"20. On what dates and for what complaints have you been attended by a physician during the last three years? April 1930 removing tonsils.

"21. How much time have you lost from work through illness during the last three years? 1 week."

The answers are claimed by the defendant to be wilfully false and intentionally misleading within § 3396 and the policy to be void.

In the latter part of 1929 the insured had a tooth extracted. There followed a swelling on the side of his face and jaw. He went to an osteopathic physician and received treatment. The doctor saw him again in May, 1931, which was after the issuance of the policy, treated him twice, and advised him to see a specialist.

After the 1929 trouble the insured saw a physician who gave him a salve for use on the swelling and another physician about the same time gave him some medicine. More particular information is not given. He was not troubled much afterwards; but in May, 1930, he had a tonsil stub removed, and afterwards a few X-ray treatments were given him. The removal of the tonsil stub is the operation mentioned in his application. He worked regularly and had no special trouble until May, 1931. Then he went to Dr. Bateman, who treated him from May 26 to September 3, 1931. He was progressively worse until his death on December 11, 1931.

If § 3370 applied it might be difficult to sustain a recovery under our holdings cited. With § 3396 applicable, as it is, there is no trouble. The jury might reasonably conclude that the insured did not consider his ailment of consequence, nor the attendance of physicians and the treatments taken of importance, prior to May, 1931, three months after the issuance of the policy. He had worked steadily since his tonsil operation a year before. The swelling on his face or jaw was not thought more than a passing trouble. The existence of good health is not negatived by the presence of mere symptoms or slight ailments. See Laury v. N. W. Mut. L. Ins. Co. 180 Minn. 205, 230 N. W. 648, 231 N. W. 824, and cases cited. Thus in Penn Mut. L. Ins. Co. v. Mechanics S. B. & T. Co. 72 F. 413, 432, 38 L. R. A. 33, it is said, citing many cases:

"It is well settled that mere temporary ailments or affections, not of a serious or dangerous character, which pass away, and are likely to be forgotten, because they leave no trace in the constitution, are not to be regarded as diseases, within the meaning of a life insurance policy."

The jury may have believed that the insured acted in good faith and that omissions were thought to be of matters of no consequence. It was not required to find that his statements were "wilfully false or intentionally misleading." See Continental Cas. Co. v. Owen, 38 Okl. 107, 131 P. 1084, 1088; Penn Mut. L. Ins. Co. v. Mechanics S. B. & T. Co. (C. C. A.) 72 F. 413, 38 L. R. A. 33.

■ Complaint is made of the refusal of the court to receive in evidence the written statement of Dr. Bateman, made on a blank of the defendant, claimed to be a part of the plaintiff's submitted proofs of death.

It is settled law that proofs of death of the insured are admissible as admissions of the beneficiary though he did not know the character of the statements in them. Laury v. N. W. Mut. L. Ins. Co. 180 Minn. 205, 230 N. W. 648, 231 N. W. 824, and cases cited; Insurance Co. v. Higginbotham, 95 U. S. 380, 24 L. ed. 499; Michalek v. Modern Brotherhood, 179 Iowa, 33, 161 N. W. 125; Metropolitan L. Ins. Co. v. Dabudka, 232 Mich. 36, 204 N. W. 771; Klein v. Prudential Ins. Co. 221 N. Y. 449, 117 N. E. 942; Voelkel v. Supreme Tent, 116 Wis. 202, 92 N. W. 1104; Haughton v. Aetna L. Ins. Co. 165 Ind. 32, 73 N. E. 592; 74 N. E. 613; 8 Couch, Cyc. Ins. Law, §§ 2226-2227; 37 C. J. p. 632, § 435; Note 17 A. L. R. 366; Dec. Dig. Ins. § 550; 20 Minn. & N. W. Dig. Id. The reason of the rule is that the beneficiary has made use of the statement for purposes of his own in making proof to the insurer of an essential fact, and so it may be used against him; or, as it is said:

"The party's *use of a document* made by a third person will frequently amount to an approval of its statements as correct, and thus it may be received against him as an admission by adoption." 2 Wigmore, Ev. (2 ed.) § 1073(4).

The use of the statement is not an estoppel; it is an admission.

■ The policy provided for disability benefits to the insured. The beneficiary was not interested in them.

On September 3, 1931, more than three months before his death, the insured applied for total and permanent disability benefits. The statement of Dr. Bateman was included in his proof of disability. It was headed: "Proof of Permanent and Total Disability." It was dated September 4, 1931. It was sent to the company, as nearly as the record shows, by its local agent. It was not a part of the' *res gestae* when the transaction involving the plaintiff's proof of death or her cause of action is viewed. The plaintiff had no duty in respect of the disability proof. It was her husband's proof—not

her proof. She did not know its contents. Whatever she did relative to it was done in behalf of her husband. It was not offered as a part of her proof. It was not to be used in her interest. It was not so used. Her proof of death under the policy was made on December 16, 1931. It was a formal proof with a physician's statement. That statement was admissible as an admission against her; but Dr. Bateman's written statement was not a part of her proof of December 16, 1931. If offered as a part of her husband's proof of disability, as in fact it was, it assumedly was competent as his admission. The statement was offered as that of Dr. Bateman in connection with the proof of disability. It was not identified as a part of the plaintiff's proof of her husband's death, as clearly it was not. It was in proof of disability—not of death—and it was the proof of the insured. Under these facts it was not competent proof of an admission by the beneficiary. Richardson v. North American L. & C. Co. 142 Minn. 295, 172 N. W. 131; Salts v. Prudential Ins. Co. 140 Mo. App. 142, 120 S. W. 714; Smith v. Royal Highlanders, 96 Neb. 790, 148 N. W. 952; Cox v. Royal Tribe, 42 Or. 365, 71 P. 73, 60 L. R. A. 620, 95 A. S. R. 752. The case of Watkins v. Metropolitan L. Ins. Co. 158 Ark. 386, 250 S. W. 350, may be noted. There the beneficiary was the same in two policies upon the same life, each in a different company. It was held that a statement in the proof of death under one policy constituted an admission in a suit on the other. That case is interesting in connection with those cited, but the principle involved is different. When the statement of Dr. Bateman was offered the claim of the plaintiff to recover disability benefits had been withdrawn. It was inadmissible.

■ But all this aside, and conceding that the statement should have been admitted in evidence, no prejudice could have resulted from an erroneous exclusion of it.

The defendant in its brief claims the portion most material in Dr. Bateman's statement was this:

"State diagnosis and describe fully the injury or illness causing present disability. Hodgkin's disease. When he came in May he

176

had a typical Pal Epstein fever, enlarged spleen, cervical, inguinal & some axillary admopathy. Great weakness, sweats, loss in weight.

"Are the symptoms principally objective or subjective? Mainly objective."

And the statement as to when the insured's health was first affected:

"When was the insured's health first affected in the present disability? According to statement & history of insured about April 1, 1931."

There was no question but that the decedent died of Hodgkin's disease. The beneficiary said so in her proof of his death; all the physicians said so; and the court charged the jury so.

Dr. Bateman fixed the commencement of the disease as about April 1, 1931. This was after the issuance of the policy. Other physicians, in their statements filed with the proofs of loss offered in evidence by the defendant, fixed it variously at a month or so later. None put it as early as the issuance of the policy. With the instrument in evidence the result must have been the same.

Besides, the statement of Dr. Bateman apparently is based upon hearsay; and, if so, it is incompetent within our holding. Laury v. N. W. Mut. L. Ins. Co. 180 Minn. 205, 230 N. W. 648, 231 N. W. 824.

The effect of the admission of the insured as against the beneficiary may be an interesting question. See 2 Wigmore, Ev. (2 ed.) § 1081(1); 2 Jones, Ev. (2 ed.) § 918; 6 Columbia L. Rev. p. 509. The interest of the beneficiary here was not vested absolutely, for the policy gave the insured the right of substitution. However, in a proper sense the beneficiary's right was not a derivative one. The question had not been discussed by counsel, and in any event the answer to it is not controlling. We refrain from discussing it.

Order affirmed.