KATE MELTON, Appellee, v. ROYAL HIGHLANDERS, Appellant.

**INSURANCE:** Mutual Benefit—Forfeiture—Conflicting Provisions. A fraternal beneficiary insurance certificate and the application and by-laws made a part thereof, which (1) in one part provide, in effect, that the member shall *ipso facto forfeit* said certificate by engaging in a named prohibited occupation, and (2) in another part provide, in effect, that no benefit shall be paid for death or disability *traceable to the prohibited occupation,* will be construed, as to a member who engages in the prohibited occupation, not as a sweeping forfeiture, but as continuing the certificate for all purposes *except risks traceable to the prohibited occupation.*

**INSURANCE:   Actions on Policies—Admissibility of Evidence—Proofs**
2  **of Loss.**  Proofs of loss are admissible against the party making
them, as substantive evidence of the truth of the material state-
ments therein contained.

*Appeal from Marshall District Court.*—JAMES W. WILLETT,
Judge.

SEPTEMBER 19, 1922.

SUIT in equity by the beneficiary of a certificate of fraternal
mutual insurance, issued by the defendant as a fraternal in-
surance association.   Plaintiff prays that the defendant be
required to make an appropriate assessment upon its members
for the payment thereof.   The defense was that John W. Melton,
the insured, met his death as the result of an accident growing
out of his employment in a prohibited occupation, and that, by
the terms of the contract of insurance, the defendant was not
liable for death so resulting.   There was a decree for the plain-
tiff, and the defendant appeals.—*Reversed.*

. *Hainer, Craft & Lane* and *C. H. Van Law,* for appellant.

*E. N. Farber* and *H. H. Craney,* for appellee.

EVANS, J.—I.   The defendant is a fraternal organization,
which insures the lives of its members, and is resident at Lin-
coln, Nebraska.   In June, 1907, John W. Melton, resident of
Marshalltown, Iowa, became a member of such
1. INSURANCE:
mutual benefit:  organization, and purported to continue as such
forfeiture: con-
flicting provi-  until the date of his death, in November, 1917.
sions.           At the time of his becoming a member of the
organization, he was a butcher by occupation.   Two years later,
he became a paid member of the fire department of Marshall-
town, Iowa, and so continued to the date of his death.
This latter occupation was a prohibited occupation, under
the Edicts of the defendant association.   The formal con-
tract of membership consisted of an application signed by
the insured, and of a certificate issued by the defendant.
Both the application and the certificate contained refer-

ence to the "Edicts of the Executive Castle," and thereby adopted the same as a part of the contract. These Edicts constituted the laws of the association, and were adopted quadrennially at the quadrennial convention, and were duly promulgated. The application signed by the insured contained the following:

"I hereby declare that the above are fair and true answers to the foregoing questions, and I hereby agree that these statements, together with those hereinafter made to the physical examiner in this application, and the Edicts of the Executive Castle of the Royal Highlanders now in force, or that may hereafter be adopted, shall form the basis of this contract for beneficial membership; that any untrue or fraudulent answers, any suppression of facts in regard to my health, age, occupation, personal habits, or neglect to pay any monthly payment which shall be required by the Executive Castle, within the time provided by the Edicts thereof, or neglect to pay the dues fixed by the said Edicts in the manner and at the time provided by said Edicts of the Castle to which I may belong, shall make null and void my benefit certificate, and forfeit all payments made thereon. I also agree that, should I now be engaged in, or *should I hereafter engage in any occupation, trade, or calling prohibited by the Edicts of the Executive Castle, that, from and after the date of my so engaging in such prohibited occupation, trade, or calling, my right, as well as that of my beneficiary, to participate in the benefit fund of the fraternity shall cease and become null and void,* and that I shall stand suspended as a member, without any notice from the Tributary Castle, and any payment of dues or monthly payment by me, or receipt thereof by any officer or member of the Tributary Castle to which I belong, or to the Executive Castle, shall not be binding on the fraternity. * * * This application and the laws of the Executive Castle now in force, or that may hereafter be adopted, are made a part of the contract between myself and the Executive Castle, and I, for myself and my beneficiary or beneficiaries, agree to conform to and be governed thereby."

The certificate issued by the defendant, so far as material herein, was as follows:

"This certifies that John William Melton has been admitted

as a member of Iowa Castle No. 154 of the Royal Highlanders, located at Marshalltown, state of Iowa, and, in accordance with and under the provisions of the edicts, rules, and regulations of the fraternity, is entitled to participate in all the rights, benefits and privileges of membership therein, and in case of death occurring after becoming a member and remaining in good standing for three years or over, the sum of $1,000 will be paid to Kate Melton, bearing the relation of wife, upon satisfactory proof of death, together with the surrender of this certificate. * * * This certificate and contract is and *shall be subject to forfeiture* for any of the causes of forfeiture which are now prescribed in the *edicts of the fraternity, or which may be prescribed by the fraternity* by amendment of said edicts. The payment of the benefit called for by this certificate and every part thereof is expressly conditioned upon the provision that the owner thereof shall have in every particular complied with the edicts, rules, and regulations governing the membership of this fraternity now in force or that may hereafter become a part of the same, and has not obtained membership by fraud or misrepresentation as to age, physical condition, or occupation, when he was admitted to membership. Both the edicts and application are made a part of this certificate.''

The Edicts contained the following:

''The following persons shall not be admitted to beneficial membership in this fraternity. * * * Members of paid and professional fire departments.''

It will be seen from the foregoing that, under the strict terms of the application and of the certificate, the membership of insured automatically ceased at the time that he became ''a member of a paid and professional fire department.''

The plaintiff pleaded an estoppel, in that the insured had at all times deemed himself a continuing member, and was treated and regarded as such by the association and by its local Castle at Marshalltown; that he had regularly paid his monthly dues, and the same had been at all times received by the officers of the association, with full knowledge of the changed occupation of the insured; that he had at all times complied with all the rules and regulations of the association, and had responded to

all his obligations thereto; and that his membership had never been challenged.

Up to this point, we have stated only a part of the Edicts. If the foregoing quotations from the application and certificate were all that there was to be considered, a fair case of estoppel or waiver of the forfeiture would be presented, and appellant does not, in argument, contend otherwise. *Trotter v. Grand Lodge,* 132 Iowa 513; *Collver v. Modern Woodmen,* 154 Iowa 615; *O'Connor v. Knights and Ladies,* 178 Iowa 383. But Sections 125 and 126 of the Edicts, so far as material herein, are as follows:

"The following persons shall not be admitted to beneficial membership in this fraternity. * * * Members of paid and professional fire departments. *Any person performing either occasionally or continuously the work* of any of the callings or occupations mentioned or referred to in this section shall be deemed to be engaged in a hazardous and prohibited occupation. The several risks attending engagement in any such occupation, habit, or practice are not assumed by this fraternity, and no death or disability growing out of engaging in such occupation, habit, or practice is insured against by this fraternity.

"Sec. 126. Penalty for Engaging in Prohibited Occupations. No benefit shall be paid on account of the death or disability of any member due or traceable to such member being engaged in any prohibited occupation; provided that a member engaging directly in the manufacture or sale of intoxicating liquors as a beverage in any capacity whatever shall *ipso facto* exclude him from membership, annul his certificate, and void all his rights in this fraternity."

The foregoing provisions were pleaded by the defendant as a part of its defense. The theory of defense put forward is that, even though the application and the certificate were drastic in their forfeiture provisions, yet the Edicts themselves qualified the harshness, and proclaimed amnesty, as it were, from the drastic provisions, and recognized a continuing membership and valid life insurance, notwithstanding change of occupation, subject only to the proviso that the insurance should not apply to injury or death resulting from the prohibited occupation. Upon this theory, the receipt of dues would be consistent with

a continuing qualified insurance, and would not operate as an estoppel or waiver. The anomalous situation created is that the plaintiff construes the contract as purporting to forfeit the membership of the insured, and the defendant construes it as continuing such membership in a qualified sense. Each party is put in the position of apparently contending for a construction that is hostile to himself. If this were done with altruistic motives, it would be commendable to both. The plaintiff, however, prefers to rely on her plea of estoppel, rather than upon the tendered construction of the defendant; whereas, the defendant tenders such a construction as its only defense against the estoppel.

Referring now to Section 125 of the Edicts, it will be noted that the first part thereof declares that membership in a "paid and professional fire department" is a prohibited occupation. This is consistent with the application and with the certificate. Is the language of the latter part of such Section 125 intended to relax or relinquish the strictness of the first part? Or is it intended thereby to create and define a class of persons who may be received and continued as members, subject to the qualification that their insurance indemnity shall not apply to injury or death growing out of such prohibited occupation, even though they engage in it only "occasionally?" It does not purport in terms to legalize the membership in a "paid and professional fire department." The *work* of a fire department is to fight fire. A person may be called upon to do such work, even though he be not a member of a paid and professional fire department. Suppose, for instance, that the insured were a member of a volunteer fire department of a small town, and were called upon to fight fire a half dozen times in the course of a year. He would not come within the provisions of the first part of such Section 125: he would come within the provisions of the latter part of such section. His membership in such volunteer fire department would not be prohibited; but he would not be deemed to be insured as against injury received while engaged in the occupation of fighting fire. This is the construction, we think, which represents the real intent of the association in the adoption of the Edicts. It renders the application and the certificate and the Edicts all consistent.

We reach the conclusion, therefore, that the real intent of the insurance contract, as formulated by the defendant, and construed most favorably to the insured, was and is that a member of a paid and professional fire department (1) should not be admitted; (2) if admitted previous to such membership, then his insurance contract should not be deemed to cover death or disability growing out of such occupation.

As such member, he was entitled to the same benefits as other members, and was subject to the same qualifications. He thereby fell into that class of members who are described in Section 125 as ''any person'' who performs ''either occasionally or continuously the work of any of the callings or occupations mentioned,'' etc. The work of a fire company is one of the occupations ''mentioned.'' This classification applied to all members of the society who may even occasionally do such work. The penalty is that their insurance shall not be deemed to cover risks arising out of such occupation or work. · This is not a forfeiture provision. It is a restricted insurance. The defendant is a mutual assessment company, and its rates of assessment are predicated upon the reduced hazard of this restriction. Presumptively, the insured never paid an assessment as indemnity for any risk growing out of such occupation. The injury which resulted in the death of the insured did grow out of the occupation of a fireman. The insured received his fatal injury while attempting to board a fire truck which was proceeding to a fire.

The net result of our analysis of the contract is: Though a member in good standing, the deceased was not insured against injuries growing out of the occupation of fireman. Giving to the plaintiff the benefit of every liberality of construction in her favor, we see no escape from the foregoing conclusion.

II. It is alleged by the plaintiff that no competent evidence was produced as to the cause of the injury suffered by the insured, and that, therefore, it cannot be said, upon this record, that the plaintiff's injury arose out of the hazardous occupation. This argument is predicated upon the fact that the defendant proved the circumstances of the injury suffered by the insured by putting in evidence the proofs of loss which

2. INSURANCE: actions on policies: admissibility of evidence: proofs of loss.

were furnished pursuant to the insurance contract, and that such evidence was mere hearsay, and was not admissible at all. The evidence went in over appropriate objection. We cannot sustain this contention. It was not open to plaintiff to object to the probative value of the proofs of death furnished by herself. The furnishing of such proofs was a condition precedent to her right of action on the insurance contract. This requirement included proof of the cause and method of the fatal injury. The defendant and its officers had a right to rely upon the statement of facts contained in such proofs. These statements were solemn admissions of the plaintiff herself, and as such were admissible as substantive evidence. They were not objectionable as mere hearsay. And this is so even though they were made by the plaintiff under oath, upon information and belief, and without actual personal knowledge of their truth. This is not saying that they were conclusive. They were subject to explanation or even contradiction.

The decree entered below must, accordingly, be—*Reversed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.