STORY GOLD DREDGING CO., APPELLANT, *v.* WILSON, RESPONDENT.

(No. 7,346.)

(Submitted March 6, 1935. Decided April 3, 1935.)

[42 Pac. (2d) 1003.]

*Mr. Justin M. Smith, Mr. Frank E. Blair* and *Mr. George Y. Patten,* for Appellant, submitted an original and a reply brief; *Mr. Patten* argued the cause orally.

*Mr. Philip Duncan, Mr. James A. Flint, Mr. A. G. Shone* and *Mr. H. L. Maury,* for Respondent, submitted an original and a supplemental brief; *Mr. Maury* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action in claim and delivery, the old action in replevin. August 3, 1932, Homer Wilson, defendant, and respondent here, entered into a contract with Nelson Story, Jr., by which Story agreed to furnish a dredge and work or dredge certain lands owned by the defendant and described in the lease, hereinafter referred to, and located in Madison county, for gold. On the fourteenth day of October, 1932, Story assigned the lease to Norwegian Gulch Dredge Company, a copartnership, and the company, on November 10, 1932, assigned the lease to the Story Gold Dredging Company, a Montana corporation, plaintiff, and appellant here. The defendant Wilson consented in writing to each of the assignments.

The provisions of the lease vital here are that the land was leased for placer mining purposes; the defendant retaining possession of the land for all other purposes. The eighth paragraph thereof provided as follows: "Second party [lessee] agrees that he will commence or cause to be commenced, mining operations on said leased premises, in the excavation for, or construction of a dredge, not later than the 1st day of October, 1932, and that he will prosecute said mining operations with due diligence and that he will construct and operate a dredge and use the same in said mining operations on said leased premises, and that said dredge shall be placed in operation not later than the 1st day of November, 1932, and that said dredge shall be operated at least six (6) months of each calendar year after the same shall have been placed in operation, beginning

the 1st day of January, 1933. And second party agrees that in carrying on and conducting said mining operations all ground mined or worked shall be run through a dredge and shall be so handled that as much of the gold contained therein as reasonably may be, under the latest improved dredging methods, shall be removed and saved therefrom." The time for placing the dredge in operation was later extended to January, 1933, and then to June.

The ninth paragraph of the lease is as follows: "The term of this lease, subject to the provisions that the same may be terminated and ended at the option of first party [lessor], in the event that second party shall not commence and prosecute said mining operations on or before the date herein specified, or in the event that he shall not commence and continue dredging operations as herein provided, or shall not keep and perform any other covenant or agreement herein contained to be kept and performed by him, shall be for the period of ten (10) years from and after the date hereof, and for so long thereafter as gold in paying quantities is being produced therefrom, in accordance with the agreements herein contained."

The defendant was to have twelve and one-half per cent. of the gross of all gold or other valuable metals or minerals recovered from the leased lands. The rooms of the dredge where the gold would be collected were to remain locked, except when a clean-up was made or when it was necessary to open the doors for repairs, and defendant was to be notified at all times when the rooms were unlocked or opened, so that he or a representative might be present, and "first party [defendant] shall have the right at any time a dredge is being operated upon said premises to be present on said dredge either in person or by representative at any time he may desire."

Paragraph 12 of the lease provides as follows: "It is agreed that in the event second party shall not cause to be operated, on the land included in this lease, a dredge at least six months out of every calendar year, commencing January 1st, 1933, that first party may at his option terminate and end this lease, and second party agrees that after commencing dredging opera-

tions upon the land included in this lease that he will operate a dredge thereon at least six months out of every twelve months after such dredging operations shall be commenced, and that after commencing dredging operations on the land included in this lease that he will continue to operate a dredge thereon until all of the ground on said leased premises which may be worked at a profit shall be mined or dredged.''

Other provisions relate to the use of water, the use of defendant's ditches, by plaintiff, to an outstanding mortgage on the premises, to probable damage to crops by the dredging operations, plaintiff's obligation to protect defendant against damage to third persons, plaintiff's right of ingress and egress, and other matters relative to which no issue is involved in the action.

Then follows paragraph 20, which provides: ''Second party shall have at all times during the term of this lease such right of possession of said leased premises as shall be necessary in doing any work of sampling or carrying on any mining operations and the doing of all things in connection therewith, but except as to the extent of possession required for such purposes first party shall have the possession of all of said rented premises and shall have the right to use the same for agricultural or grazing purposes and for such other purposes as first party may desire.''

Plaintiff agrees not to assign the lease without defendant's approval, and, in case of forfeiture, will give the latter such reconveyance as shall be necessary to remove any cloud from defendant's title. The lease binds the heirs, executors, administrators, assigns and successors of the respective parties. Nelson (Bud) Story, Jr., the original lessee, died October 21, 1932.

It appears that actual dredging operations were started on or about January 25, 1933, and continued for approximately seven and a half months. During that period gold and other minerals to the value of approximately $54,217.84 were recovered, and the defendant received on account of his twelve and one-half per cent. royalty the sum of $6,777.23. On Oc-

tober 7, 1933, the defendant, with three other parties, went upon and took possession of the dredge, ordered the plaintiff's employees off, and placed an armed custodian in charge of the dredge. October 13 thereafter plaintiff filed its complaint herein. November 1 defendant answered, first by general denial, and then set up as an affirmative defense that the dredge, being part of the real estate, belonged to him under the provisions of section 6670, Revised Codes 1921. While it is not clear from the record, it appears that plaintiff repossessed the dredge on or about November 1, 1933, and set a crew to dismantling it. On November 3 defendant filed an affidavit setting up the facts generally as stated above, and alleging that, if plaintiff were permitted to remove the dredge from the premises, defendant would be without recourse, and prayed the court to cite certain officials and employees of plaintiff for contempt. November 9, 1933, it was stipulated by the attorneys for the respective parties that the contempt proceedings would be abandoned, and that the property involved "as described in the pleadings" should remain on the premises of the defendant, where it was then located, until the termination of the action, and setting December 2, 1933, for hearing on the merits, which was approved by the court.

The cause came on for hearing on December 2, 1933, as stipulated. After the evidence was all presented and both parties had rested, each party separately moved for a directed verdict. The court thereupon, with the consent of the parties, excused the jury and took the matter under advisement. March 14, 1934, the court filed its order directing that the action be dismissed, for the reason that "it appearing to the court that the property sought to be recovered by this action is not personal property and the action being for the specific recovery of a chattel." Judgment was entered on March 20, 1934, in accordance with the order. This appeal is from the judgment.

Defendant's motion for a directed verdict was based upon the insufficiency of the complaint, and upon the grounds that the property involved was real estate; that plaintiff at no time

was entitled to the exclusive possession of the dredge, nor was it so entitled at the time the action was begun; that under the evidence and the terms of the lease defendant had a right to place his representative, Womack, on the dredge; and that the dredge was to remain a part of the land for a period of ten years or until all the leased premises dredgable were worked. The other grounds enumerated in support of the motion are of like tenor, involve the same questions of law, and will not be further referred to here.

The contentions and arguments of counsel run rather far afield, but the merits of the action center around the two questions: First, as to whether the complaint states a cause of action; and, second, as to whether plaintiff has a right to remove the dredge under the circumstances shown by the record. The determination of these two questions will determine the respective rights of the parties in this particular action.

Defendant contends that plaintiff's allegation of possession, being defective, "annuls the complaint as for replevin (or any other relief)." Paragraphs 2 and 3 of the complaint are as follows:

"II. That on the 7th day of October, 1933, in the county of Madison, State of Montana, the said plaintiff was, and now is, the owner, and in the possession, and entitled to the possession, of the following described personal property, to-wit: one certain 5 foot floating gold dredge, which was then, and now is, situated on the farm of the defendant on Norwegian Creek about six miles northwest of Norris in said Madison county, State of Montana."

"III. That the said defendant on the 7th day of October, 1933, in the county of Madison, State of Montana, without the plaintiff's consent, and wrongfully and unlawfully, took the possession of said personal property from the plaintiff, and still remains in the possession of the same, and that the defendant claims to be the owner of the said personal property."

It is obvious that the phrase "and now is" in paragraph 2

of the complaint relates to the claim of ownership and does not apply to the alleged possession of the dredge. If that part of the paragraph attacked were changed to read, ''the said plaintiff was the owner and in possession, and is now the owner and entitled to possession of the,'' etc., it would remove the ground of attack, but would not change the obvious meaning of the pleader. Certainly, plaintiff knew it was not in possession of the dredge, for it alleges in the next succeeding paragraph that the possession had been taken from it by the defendant. What the plaintiff intends is clear and is sufficient to inform the defendant of what it desires to recover. ''The object of pleading is to notify the opposite party of the facts which the pleader expects to prove.'' (*Kozasa* v. *Northern Pacific Ry. Co.*, 61 Mont. 233, 201 Pac. 682.) This and numerous other Montana cases of similar import clearly state the purpose of pleadings and are accepted as establishing the general rule.

''A pleading must be construed as an entirety. * * * Effect must be given to every part of the pleading, and all parts will, if the language permits, be so construed as to be consistent with each other.'' (49 C. J. 116, sec. 108, and cases cited; *Robbins* v. *Law*, 48 Cal. App. 555, 192 Pac. 118.)

''The complaint must be liberally construed with a view to substantial justice between the parties. * * * Whatever is necessarily implied in or is reasonably to be inferred from an allegation is to be taken as directly averred.'' (*Linney* v. *Chicago etc. Ry. Co.*, 94 Mont. 229, 21 Pac. (2d) 1101, 1103, and cases cited.)

While the grammatical niceties of the complaint might be improved, the defendant may not complain that he cannot determine from the complaint what the plaintiff's rights are alleged to be, or what it expects to prove. The essentials of a complaint as specifically set out in sections 9128 and 9129, Revised Codes 1921, are substantially complied with here, and the complaint states a cause of action in claim and delivery.

On the merits of the action, we agree with the trial court that the action must be dismissed, but on grounds quite

different from those assigned by that court, and that the finding must be modified as hereinafter mentioned. If a decree is justified by the evidence as a whole, it is immaterial what reasons are assigned for the conclusion reached. (*Hale* v. *Belgrade Co., Ltd.,* 75 Mont. 99, 242 Pac. 425, and cases cited.)

Our reasons for agreeing to the decree of dismissal are based on the ground that the contract requires plaintiff to operate the dredge on the leased premises six months in each calendar year, beginning January 1, 1933, for a period of ten years. It has fulfilled its contract for one year only of the ten. The ten-year provision of the contract is clear and unambiguous, and, "where a contract is plain and clear in its terms, neither interpretation nor construction is permissible. * * * When the language employed by the parties 'is free from ambiguity or uncertainty, it is beyond the power of the court to enlarge or restrict its application or meaning.' " (*McDaniel* v. *Hager-Stevenson Oil Co.,* 75 Mont. 356, 243 Pac. 582, 584, and cases cited.) "Courts must enforce contracts as made, not make new ones for the parties, no matter how unreasonable the terms may appear." (*McConnell* v. *Blackley,* 66 Mont. 510, 214 Pac. 64.)

Plaintiff, from the evidence, is obviously insolvent. For the court to sustain the demands of plaintiff and permit it to remove the dredge might result in the court's lending its aid to the plaintiff to breach its contract. This we cannot do.

Defendant contends that the dredge is real property, and relies upon section 6670, Revised Codes 1921; the plaintiff, that it is personal property, and that section 6825 modifies section 6670, arguing at length that the dredge is a trade fixture, and that it was never the intention of the parties that it should lose its character as a chattel and become a part of the realty. We have sustained plaintiff's complaint as stating a cause of action in claim and delivery, and, of course, treating the dredge as personal property. Whether it is personal or real property is not vital to the merits of the action. Whether it is real or personal property does not affect that provision of the contract by which plaintiff has bound itself

to carry on dredging operations for a period of ten years or until the ground that can be worked profitably has all been dredged, and for the reasons already stated the dredge may not be removed without the consent of the defendant. When the dredging has been carried on to the extent required by the contract, the right of the lessee to remove fixtures may then be determined, and we think that question must be determined by the intention of the parties.

The evidence does not show that plaintiff intended to forfeit its lease or abandon it. Both directors and officers of plaintiff admitted to defendant that plaintiff would have to shut down. Shutting down was admittedly due to the fact that plaintiff had lost money in its operations on the premises, was out of money, and was "compelled to sell the dredge to pay its bills."

Counsel for defendant contend that the provision of the lease which grants defendant the right to go upon the boat at any time, either in person or by representative, gave defendant a joint right of possession with plaintiff. This contention is untenable. The right granted to defendant to go upon the boat or dredge at any time was clearly for the purpose of looking after his interest—the twelve and one-half per cent. gross royalty of the gold recovered. Defendant was a mere licensee for this purpose only, and the plaintiff's possession was otherwise absolute.

Plaintiff was in possession of the dredge on October 7, 1933, when defendant entered thereon with three associates and forcibly ousted the plaintiff's employees and left an armed representative in charge, with instruction to permit no one to go upon the dredge. This was in violation of the terms of the contract. Defendant's obvious purpose in going upon the dredge at that time was entirely foreign to his right to be there under the contract.

Plaintiff, by shutting down after operating seven and a half months in 1933, was within the provisions of the lease, and it could remain shut down until June 30, 1934, without breaching its contract. Defendant gave no notice nor took any action to declare the lease forfeited, and, when he with his associates

took forcible possession of the dredge on October 7, 1933, and ousted the plaintiff, he committed an unauthorized act, and affected plaintiff's ability to carry out its contract to such an extent as relieved plaintiff of any obligation to continue operations while defendant was in possession of the dredge, and defendant may not question plaintiff's right to remain shut down from and after the determination of this action for a period of eight months and twenty-three days, which is the period of time plaintiff might have remained inoperative from and after October 7, 1933, without breaching its contract.

The theory of joint possession advanced by defendant is contrary to the clear meaning of the provisions of the lease, taken as a whole.

The cause is remanded to the district court of Madison county, with directions to strike out the finding that the dredge is not personal property and allow the judgment of dismissal to stand. Each party will pay his own costs of appeal.

Modified and affirmed.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and STEWART concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument and takes no part in this decision.

Rehearing denied April 15, 1935.