SCHROEDER, Administrator, Respondent, *v.* METROPOLI-
TAN LIFE INSURANCE CO., Appellant.

(No. 7,596.)

(Submitted November 7, 1936. Decided December 29, 1936.)

[63 Pac. (2d) 1016.]

*Mr. Charles R. Leonard* and *Mr. W. D. Kyle,* for appellant, submitted a brief; *Mr. Kyle* argued the cause orally.

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondent, submitted a brief; *Mr. Shone* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action to recover on a life insurance policy. December 14, 1934, Matilda Schroeder, accompanied by her husband, went to the office of the local agent of the defendant and signed an application for an insurance policy to be issued by the defendant in the sum of $225. The application specified that the applicant never had any of a number of diseases enumerated in the application and that the applicant had not been treated by a physician within three years except as stated; the only exception mentioned was treatment by Doctor McHeffey, in November, 1934, for a "cold." No medical examination was had, the policy being issued on the representations contained in the application alone. December 24, 1934, policy No. 35537596 was issued and delivered by the defendant to the assured. It provided for a weekly premium of 45 cents. After the contract had been in effect for approximately six weeks and premiums amounting to a total of $2.70 had been paid, the insured died on February 4, 1935.

The plaintiff was the husband of the assured, her only heir at law, and was appointed administrator of the deceased's estate. February 11, 1935, proof of death of the insured was made on a printed form on which blank spaces were left for answers to the questions printed thereon. Some few days after the date of death, proof thereof was submitted to the defendant. Accompanying the proof of death is a "Physician's Statement," also on a printed form obviously supplied by the defendant. The physician's statement was made by Doctor Hugh J. McDonald, of Butte, who died some six weeks thereafter. The physician's statement certifies that Matilda Schroeder was 58 years of age, was found dead in bed February 4, 1935, and that the cause of death was "Chronic Myocar-

ditis and Acute Bronchitis." This answer was in response to question No. 6 of the physician's statement form above mentioned. Question No. 9 of such form is divided into two parts, (a) "Date of your first visit in last illness," and (b) "Date of your last visit"; the answer to (a) is, "September 27, 1934"; and the answer to (b) is "October 6, 1934." Question No. 12 is, "Was deceased afflicted with any infirmity, deformity or chronic disease? If so, please specify." The answer is, "Yes. See answer to 6." The proof of death states Doctor McDonald treated the insured September 24, and October 6, 1934, but makes no mention of any treatment by Doctor McHeffey at any time, being just the reverse of the statement in the application. The proof of death gives the cause of death as "heart attack."

Defendant's demurrer to the complaint was heard and overruled. The answer traverses all the material allegations of the complaint, and then pleads an affirmative defense founded on misrepresentations made in the application which, it is alleged, were made with the intent to deceive the defendant, and that the applicant knowingly, intentionally, and fraudulently suppressed and concealed from the defendant facts about her health and about attendance upon her in September, and October, 1934, by Doctor McDonald; that defendant believed and relied upon such representations, accepted the risk, executed and delivered the policy, which it would not have done had the statements in the application been in accord with the facts; that the defendant learned for the first time that the insured was a "sufferer" from heart trouble when the proof of death containing the information above mentioned was submitted to it by the plaintiff; that defendant tendered the amount of premiums paid on the policy to the plaintiff, and, upon his refusal to accept the amount, deposited the same with the clerk of the court for plaintiff.

The reply denies all the material allegations of the affirmative defense, and then, "for a defense and in avoidance of defendant's further, separate and affirmative defense," alleges

that the plaintiff was present when the insured made the application for the insurance and heard the insured inform the agent of the defendant, who was filling in the answers to the questions on the application, that Doctor McDonald had treated the insured for a cold in September, and October, 1934, but by mutual mistake the name of Doctor McDonald was omitted from the answer to question No. 5 of the second page of the application, and that the insured had no intent to deceive the defendant, and made answer to the questions in good faith, and concludes such pleading with a prayer for permission to add to the application under question 5 thereof the name of Doctor Hugh J. McDonald by way of reformation of such application, and to harmonize the same in accordance with plaintiff's contention. Defendant moved to strike this part of plaintiff's pleadings as sham, redundant, irrelevant and incompetent. The motion was denied.

The cause was tried by the court sitting with a jury, and both a special and general verdict were returned in favor of the plaintiff, and judgment was rendered and entered thereon. The trial court incorporated in the decree an order reforming the insured's application for the insurance policy in the manner and form as prayed for in plaintiff's reply as heretofore mentioned. The record does not show that the special verdict was asked for or directed, but as the question on which it was based is set out in the record and no objection was made to it as irregular, it is assumed it was duly authorized. Defendant's motion for a new trial was made and denied. The appeal is from the judgment.

The assignments of error go to the court's overruling defendant's demurrer to the complaint; to denial of defendant's motion to dismiss the action at the commencement of the hearing; to the denial of its motion for directed verdict, the rejection of its proposed findings 16, 17 and 18; denial of its motion for a new trial; that the verdict and judgment are against law; and that the evidence is insufficient to sustain either the general or special verdicts or the judgment thereon.

While a number of questions raised and argued have more or less bearing on the controversy, we are of the opinion that none of the issues raised by the pleadings are vital here, except such as relate to that provision of the contract relative to the "sound health" of the insured on the date of the policy. The reformation of the application as prayed for in the reply and ordered by the court is not of material importance.

Section 8108, Revised Codes, provides that the policy "must contain the whole contract." The application here is not referred to in the policy and, of course, cannot be accepted as a part of the contract. (Sec. 8106, Rev. Codes; *State ex rel. City of Missoula* v. *Holmes,* 100 Mont. 256, 281, 47 Pac. (2d) 624, 100 A. L. R. 581.) It is not to be understood that we hold that an application is immaterial under all circumstances, particularly if it be found to contain a false and material representation as defined in *Pelican* v. *Mutual Life Ins. Co.,* 44 Mont. 277, 119 Pac. 778, 781; but to become a part of the contract it must be incorporated in the policy by reference or otherwise, and, whatever its vital relation to the controversy here, we think it relatively unimportant as compared with the provisions of the contract as set out in the policy. This court said in the *Pelican Case,* supra, that "a warranty must be part and parcel of the contract—made so by express agreement of the parties upon the face of the policy." Consequently, the conditions in the policy here must be accepted as warranties, and, when a warranty is found to have been violated in any insurance contract, it is labor without sensible purpose to endeavor to determine the legal effect of an alleged fraudulent representation which appears only in the application.

It may be added in passing that there is serious doubt about the plaintiff's pleading being sufficient to justify the court's order directing the reformation of the application as prayed for (Bancroft's Code Pleading, vol. 4, p. 4004, sec. 2232), and the sufficiency of the evidence is also in doubt, but, for the reasons stated, we deem it unnecessary to extend this opinion

by a discussion of those questions here. We will state, however, that the application recites that the insured had never had any of a number of diseases enumerated in the application, including afflictions of the heart, whereas the death certificate made by Doctor McDonald gives the cause of death as "Chronic Myocarditis and Acute Bronchitis," as heretofore stated, and the purpose in seeking to have the application reformed was to have it show that Doctor McDonald had treated the insured in September and October, 1934, for a cold, plaintiff alleging and defendant denying that the insured so advised the agent of the insurer at the time the application was being filled out; plaintiff further contending and defendant denying that such statement by the insured and Doctor McDonald's name were omitted from the application "by the mutual mistake of the parties."

The testimony of the plaintiff, which was the only evidence offered in his behalf, was confined almost entirely to facts relative to the application and is not directly material to questions arising out of the provisions of the contract.

The rule is well established that, in the absence of fraud and questions of public policy, controversies arising out of contractual relations must be determined from the contract as made, not by new ones contrived for the parties by the courts. (*Story Gold Dredging Co.* v. *Wilson,* 99 Mont. 347, 42 Pac. (2d) 1003, and cases cited.) Courts universally recognize the rule of liberal construction of life insurance policies in favor of the insured and against the insurance company (*Parke* v. *New York Life Ins. Co.,* 95 Mont. 503, 28 Pac. (2d) 443, and cases cited), but such contracts are otherwise subject to the sames rules of construction that apply to contracts generally, and such liberal construction must not be carried to the point of abrogating vital provisions in the contract and substituting new ones contrived by the courts.

Turning now to the consideration of the provisions of the contract as they appear on the face of the policy, "Sound health" as used in the policy here is a term used to assert that the applicant is free from any physicial affliction of

a serious nature tending to undermine the constitution of the subject; the term does not apply to temporary indispositions. (*Parke* v. *New York Life Ins. Co.,* supra.)

The application, the contract or policy, the proof of death filed with defendant by the plaintiff, the physician's certificate specifying the cause of death, were all certified up and are before the court. We think the application need not be considered further.

Set out on the face of the policy are the following "Conditions" amongst others:

"If, (1) the Insured is not alive or is not in sound health on the date hereof; or if (2) before the date hereof, the Insured has been rejected for insurance by this or any other company, order or association, or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, *or disease of the heart,* liver or kidneys, unless such rejection, medical attention or previous disease is specifically recited in the 'Space for Endorsements' on page 4 in a waiver signed by the Secretary; * * * then, in any such case, the Company may declare this Policy void and the liability of the Company in the case of any such declaration or in the case of any claim under this Policy, shall be limited to the return of premiums paid on the Policy, except in the case of fraud, in which case all premiums shall be forfeited to the company."

The question here is, Did the insured violate the warranty on the face of the policy that she was in sound health December 24, 1934, the date of the policy?

Mr. Chief Justice Brantly, speaking for the court in *Pelican* v. *Mutual Life Ins. Co.,* supra, said: "The general rule is that a warranty must be a part and parcel of the contract—made so by express agreement of the parties upon the face of the policy. It is in the nature of a condition precedent and must be strictly complied with or literally fulfilled, to entitle the assured to recover on the policy. It need not be actually material to the risk; its falsity will bar

recovery because by the express stipulation the statement is warranted to be true, and thus is made material. (*Alabama Gold Life Ins. Co.* v. *Johnston*, 80 Ala. 467, 2 So. 125, 59 Am. Rep. 816; *Collins* v. *Metropolitan Life Ins. Co.*, 32 Mont. 329, 80 Pac. 609, 1092, 108 Am. St. Rep. 578.) 'A representation is not, strictly speaking, a part of the contract of insurance, or of the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it. A false representation, unlike a false warranty, will not operate to vitiate the contract, or avoid the policy, unless it relates to a fact actually material, or clearly intended to be made material by the agreement of the parties. It is sufficient if representations be substantially true. They need not be strictly, or literally, so. A misrepresentation renders the policy void on the ground of fraud, while a noncompliance with a warranty operates as an express breach of the contract.' (*Alabama Gold Life Ins. Co.* v. *Johnston*, supra).''

We think that the stipulation in the policy involved in the action at bar heretofore recited, wherein it is agreed that, if the insured is not in sound health on the date of the policy, the insurance company may declare the policy void, is such a condition as the court had in view when it said in the *Pelican Case*, in defining a warranty, that it ''is in the nature of a condition precedent and must be strictly complied with or literally fulfilled, to entitle the assured to recover on the policy.''

This brings us to the consideration of the evidence to determine whether the insured complied with the ''condition precedent'' on the question of sound health as set forth in the contract.

It will be recalled that Doctor McDonald recited in the death certificate that he treated the insured on October 6, 1934, and that it was his last visit; that there was no inquest or post mortem, but he stated that the cause of death was ''Chronic Myocarditis and Acute Bronchitis.'' To be qualified to make this statement of the cause of death, he must have acquired the necessary knowledge by his attendance upon the

insured on or prior to October 6, 1934. The cause of death statement made by Doctor McDonald was made in answer to questions about the last illness of the insured. It is therefore obvious that Doctor McDonald believed the insured to have been in her last illness on October 6, 1934.

Doctor Torkelson, called as a medical expert by the defendant, his qualifications being admitted by counsel for the plaintiff, testified as follows: "Myocarditis is a weakening or degeneration of the heart muscles; and chronic myocarditis is a condition that extended over some period of time, probably several years. In common parlance it is what is known as heart disease. It is not a curable disease. And it usually terminates in the death of the individual. It becomes progressively worse until death. If a person, a woman approximately 57 or 58 years of age, had chronic myocarditis between September 27, 1934, and October 6, 1934, she had that condition on December 14, 1934."

Doctor Emory, another expert, was called and testified on behalf of the plaintiff. His testimony was somewhat more favorable to the plaintiff than that of Doctor Torkelson, but it did not materially conflict with the testimony of Doctor Torkelson that chronic myocarditis was a disease that extended over a period of time.

We think this evidence clearly sufficient to establish the fact that the insured had a serious heart affliction on December 24, 1934, which ultimately resulted in her death.

The proof of death, which the plaintiff made and filed with the defendant to support the claim made under the policy, states the cause of death to be "Heart Attack." Plaintiff also attached to such proof the certificate of Doctor McDonald, wherein the doctor certified the cause of death to be "Chronic Myocarditis and Acute Bronchitis." It is the general rule that, when one makes proof of death under a claim for recovery on a life insurance policy, and adopts the certificate of death made by a physician, the statements contained in the physician's certificate are sufficient to make a prima facie

case against the beneficiary. (*Beard* v. *Royal Neighbors of America*, 53 Or. 102, 99 Pac. 83, 17 Ann. Cas. 1199, 19 L. R. A. (n. s.) 798; *Michalek* v. *Modern Brotherhood of America*, 179 Iowa, 33, 161 N. W. 125; *Melton* v. *Royal Highlanders*, 194 Iowa, 352, 189 N. W. 787; *Metropolitan Life Ins. Co.* v. *Dabudka*, 232 Mich. 36, 204 N. W. 771; *Hicks* v. *Metropolitan Life Ins. Co.*, 196 Mo. App. 162, 190 S. W. 661; *Kline* v. *Prudential Ins. Co.*, 221 N. Y. 449, 117 N. E. 942; *Thornell* v. *Missouri State Life Ins. Co.*, (Tex. Com. App.) 249 S. W. 203; *Eklund* v. *Metropolitan Life Ins. Co.*, (Utah) 57 Pac. (2d) 362; *Kudla* v. *Prudential Ins. Co.*, 272 Mich. 555, 262 N. W. 407; *Woods* v. *National Aid Life Assn.*, (Mo. App.) 87 S. W. (2d) 698.)

Another matter that tends to strengthen the defense is that part of the physician's statement as to the cause of death, where, in the initial paragraph following the heading, it is stipulated by the parties to this controversy, that "It is hereby admitted and agreed that the certificate of Dr. H. J. McDonald shall be considered as part of the proof of death under Policy No. 35537596 in accordance with the conditions of said policy," [Signed] "John Schroeder, Claimant." Witness, "Tim J. Downey." Then follows Doctor McDonald's statement as to the cause of death as heretofore mentioned. Thus it will be seen that the plaintiff specifically agreed that the death certificate which gave heart affliction as the cause of death should be considered a part of the proof of death upon which plaintiff predicated his claim. No attempt was made to impeach the statements contained in Doctor McDonald's certificate of the cause of death, or otherwise overcome the prima facie case thereby made against the claim of the plaintiff.

It appears to us that, in order to permit the plaintiff to recover here, it would be necessary to set aside and ignore the old rule heretofore referred to, which confines the power of courts to the function of construing contracts, not making new ones for the parties. Plaintiff has shown no right to recover under the contract as made, and we are not permitted to make a new one for him.

The judgment is reversed and the cause remanded to the district court, with instruction to dismiss the action.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied January 8, 1937.