STORY GOLD DREDGING CO., Respondent, *v.* WILSON, Appellant.

(No. 7,723.)

(Submitted December 18, 1937. Decided January 31, 1938.)

[76 Pac. (2d) 73.]

*Mr. H. L. Maury, Mr. A. G. Shone, Mr. Philip Duncan* and *Mr. J. A. Flint,* for Appellant, submitted an original and a reply brief; *Mr. Maury* argued the cause orally.

*Mr. George Y. Patten, Mr. J. E. Kelly, Mr. Frank E. Blair,* and *Mr. Justin M. Smith,* for Respondent, submitted a brief; *Mr. Patten* and *Mr. Kelly* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to recover the possession of a certain dredge used for the recovery of placer gold. The complaint was in two counts; the first in the form of an action in claim and delivery, and the second in the form of one to quiet title to personal property. (Secs. 9478.1 and 9478.2, Rev. Codes.)

The case was tried on the issues raised by the complaint, answer, and reply. After all the evidence was introduced on behalf of the respective parties, a motion for directed verdict on behalf of the plaintiff was sustained by the trial court. A verdict, pursuant to the direction of the court, was returned by the jury, finding the issues generally in favor of the plaintiff. A judgment was entered on this verdict, awarding the possession of the dredge to plaintiff and providing in the alternative, in the event delivery of the dredge could not be had, for the recovery of its value; also adjudging that the defendant had no right or title to the dredge, and that the title of the plaintiff was good and valid. The appeal is from the judgment.

A predecessor in interest of plaintiff in 1932 entered into a written lease or contract, for placer mining purposes, of certain lands in Madison county, the property of the defendant. Among other terms of the lease, plaintiff was to place a dredge on these lands for use by it in gold mining operations within a definite time, which it did prior to January 25, 1933. Plaintiff proceeded to operate the dredge in conformity with the contract until the fall of 1933, when operations ceased. At the time of the cessation of these operations, plaintiff had done all

of the dredging it was obliged to do that year. On October 7, 1933, defendant forcibly took possession of the dredge. Plaintiff then commenced a claim and delivery action for the recovery of the possession of the dredge. Defendant answered in that action and, after denying certain allegations of the complaint, affirmatively alleged that the dredge was a part of the real estate and, hence, the property of the defendant. After reply was filed, the case was tried and the court found that the dredge was not personal property, and ordered the dismissal of the case. Soon after the commencement of this former action, by stipulation of the parties the dredge was to remain on the lands in its then condition pending the determination of the action. That case was appealed to this court. (*Story Gold Dredging Co.* v. *Wilson,* 99 Mont. 347, 42 Pac. (2d) 1003, 1006.) We there directed that the judgment entered be modified by striking out the finding to the effect that the dredge was not personal property, and, when so modified, the judgment was ordered affirmed.

In the opinion we found that the defendant had taken possession of the dredge without authority at the time of its seizure, and, the plaintiff not being in default at the time, it was ordered that plaintiff might resume operations under its contract within eight months and twenty-three days thereafter, that being the period of time before plaintiff would have been in default at the time of seizure of the dredge. The effect of this order was to relieve plaintiff from any technical defaults which had arisen during the pendency of the litigation, and to place it in the same position it occupied at the time of the seizure of the dredge by the defendant.

Before the expiration of this period of time the plaintiff served on the defendant a notice to the effect that it would not further operate the dredge on these lands, asserting that all of the ground described in the lease which might be dredged profitably had been worked, and demanded the possession of the dredge. Defendant upon receipt of this notice refused to relinquish possession of the dredge for the purpose of removing it from the lands in question, but offered to permit

plaintiff to take possession of the dredge for the purpose of continuing dredging operations, commencing at any time within the time allowed by this court. This offer on the part of the defendant was not accepted by the plaintiff, who thereupon commenced this action.

Since the sufficiency of the pleadings is not here in question, we will only state the issues raised thereby, which may be summarized as follows: (1) The ownership of the dredge, i. e., whether it was real or personal property. (2) Whether all of the ground on these premises which was capable of being dredged profitably, had been worked. (3) The effect of the former action and the judgment rendered therein upon this action.

The evidence on the trial of this case was in sharp conflict ▇ upon the issue as to whether all of the ground on the premises, which could be profitably worked, had been dredged. In this state of the record, in view of the action of the trial court granting a motion for a directed verdict, we must view this evidence in the light most favorable to the defendant. Hence, applying this rule, the evidence most favorable to defendant is all to the effect that all of the ground which might be profitably mined had not been dredged by the plaintiff.

Subsequent to the commencement of this action, and after the period of time granted by this court in which plaintiff might resume operations, the defendant leased the premises to third parties who took possession of the dredge, repaired it at considerable expense, and conducted some dredging operations on the premises. Evidence of these facts was received on the trial of the cause. Some of it was admitted over objection. No appropriate allegations of these facts were found in the pleadings. Near the close of the case plaintiff moved to amend the complaint to the effect that the lease was terminated. The trial court in effect granted the motion by ordering the complaint to be deemed amended to conform to the proof.

The proper method of pleading a fact material to the cause ▇ occurring after the filing of a former pleading by a party is by way of a supplemental pleading. (Sec. 9181, Rev. Codes.)

The right to file a supplemental pleading is not as of right, but the application to file such a pleading is addressed to the discretion of the trial court. (*Pue* v. *Bushnell*, 72 Mont. 265, 233 Pac. 124.)

Under any admissible construction of the lease, it was to continue by its terms at least until all of the ground on the premises, which might be profitably worked, had been dredged. When the plaintiff notified defendant that it would dredge no more, the contract was breached, which would excuse defendant from longer performing the contract on his part. (*McCaull-Dinsmore Co.* v. *Jackson*, 57 Mont. 555, 189 Pac. 771.) Defendant waived this breach and therefore, on the face of the original pleadings, the contract was not terminated. (6 R. C. L. 930.) Later the defendant, by leasing the premises for the same purpose, clearly evinced an intent no longer to be bound by the contract, which was equivalent to a consent to its termination or rescission. (6 R. C. L. 930.)

The effect of the termination of this contract was material, but the method of incorporating it in the pleadings was irregular. It would have been an abuse of discretion if application had been made to file a supplemental complaint containing allegations of this fact, to deny it. Hence, no prejudicial error was committed in allowing the amendment.

Since the contract was terminated or abandoned, we now approach the question as to whether, after the termination of the contract, plaintiff was entitled to remove the dredge from the premises of the defendant. In our opinion in the previous case we reviewed many of the provisions of this contract. No express provision is found therein with reference to the rights of the parties either to remove or retain machinery placed on the premises during the term of the lease, upon the termination of the contract, or any other time.

It is contended here that we decided in the previous case that this dredge is personal property, and hence it was removable by the plaintiff. On the former appeal it was argued that the dismissal was justified because the complaint was insufficient as one for claim and delivery of personal property. If the con-

tention were sound, the action of the trial court there was correct, regardless of whether the dredge was real or personal property. We held the complaint sufficient, saying, in speaking of the dredge: "Whether it is personal or real property is not vital to the merits of the action." The trial court there decided in favor of the defendant on the ground that the dredge was real property. We said: "We agree with the trial court that the action must be dismissed, but on grounds quite different from those assigned by that court." We also observed: "When the dredging has been carried on to the extent required by the contract, the right of the lessee to remove fixtures may then be determined." The substance of the holding in the prior case, in so far as it may be important here, was that the contract was valid and existed, and had not been breached, at least to the extent so as to relieve plaintiff from its obligation further to perform, and to permit it to remove the dredge under those circumstances would result in this court "lending its aid to the plaintiff to breach its contract." We did not there determine whether the dredge in the circumstances was real or personal property. We expressly reserved the question as to the character of this property.

Having determined that the contract is now ended, we enter ▮▮▮▮ upon the consideration of the question: Was the dredge real or personal property as a matter of law?

Section 6667, Revised Codes, provides: "Real or immovable property consists of: 1. Land; 2. That which is affixed to land; 3. That which is incidental or appurtenant to land; 4. That which is immovable by law." And section 6670 declares: "Sluice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine."

The ground on which this dredge was located was treated by the parties when they contracted, as being valuable for mineral. More than $54,000 worth of gold was removed from it by the plaintiff through the operation of the dredge in question. The dredge was mining machinery used in working or developing

a mine. (*Dietrich* v. *Martin*, 24 Mont. 145, 60 Pac. 1087, 81 Am. St. Rep. 419.)

This court, in the case of *Montana Elec. Co.* v. *Northern Valley Min. Co.*, 51 Mont. 266, 153 Pac. 1017, 1018, gave consideration to the meaning and purport of what are now sections 6667, 6669, and 6670. The precise question there under consideration was whether certain machinery used in the operation of the mine had become a part of the real estate. The court there declared: "(1) Whether what would otherwise be personal property has become a fixture by reason of its attachment to the soil is primarily a question of intention on the part of the person attaching it; (2) the attachment in the manner indicated in our Code sections above raises a presumption that the one who made the attachment intended the thing affixed to become a part of the realty; this presumption, however, is a disputable one; (3) as a general rule, the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment determine whether the thing attached is realty or personalty." This case was approved and followed in the case of *Shipler* v. *Potomac Copper Co.*, 69 Mont. 86, 220 Pac. 1097, 1100, wherein it was said: "The intention mentioned in all of these authorities is not the secret intention of the person making the annexation, but the intention deducible as a presumption of law from the character of the chattel, the manner and effect of its annexation, its adaptability to the use of the realty, the purpose to which it is put, the relation of the parties, and the policy of the law."

Considering only the facts, namely, that the dredge was mining machinery placed on mining ground and used for working and developing the mine, and applying section 6670, supra, the disputable presumption arises to the effect that the dredge became a part of the real property. (*Cheadle* v. *Bardwell*, 95 Mont. 299, 26 Pac. (2d) 336.) This presumption is overcome where personal property is affixed to the land under an express agreement that it may be removed as between the parties and those having notice of such agreement. (*Cheadle* v. *Bardwell*,

supra; *Montana Elec. Co.* v. *Northern Valley Min. Co.,* supra; *Schmuck* v. *Beck,* 72 Mont. 606, 234 Pac. 477.)

Plaintiff argues that it is entitled to remove the dredge because it is a trade fixture, within the meaning of the provisions of section 6825, Revised Codes, reading as follows: "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises." This section is a statute relating to the subject of personal property placed by a tenant upon the premises of the landlord during the term of the lease, providing when it may be removed by the tenant. It is a general statute, in that it relates to all classes and kinds of tenancies. Section 6670 declares the rule on the same subject, but relates only to personal property placed upon and used in the operation and development of mining ground.

We have said in the case of *Durland* v. *Prickett,* 98 Mont. 399, 39 Pac. (2d) 652, 656: "In the case of *Langston* v. *Currie,* 95 Mont. 57, 26 Pac. (2d) 160, 163, this court said: 'Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but, to the extent of any necessary repugnance between them, the special will prevail over the general. (*State ex rel. Daly* v. *Dryburgh,* 62 Mont. 36, 203 Pac. 508.)' " This rule is applicable here, and accordingly section 6825 is of no controlling force as applied to the facts in this case. But this rule does not preclude the consideration of the fact of the relation (such as landlord and tenant) of the parties in determining their intention.

Opposed to the disputable presumption which we have noticed are certain facts, namely: Plaintiff, at great expense to it, placed this dredge upon the land of the defendant. The land was mortgaged. Plaintiff did not own the land and had no

interest in it other than the rights accorded to it by the lease to dredge the land. It was contemplated by the contract that at some time in the future all of the ground capable of being profitably worked would be dredged, and the contract performed and ended. The dredge was not physically attached to the land. To affirm the action of the trial court we must presume that it was the intention of the parties that the dredge was to remain personal property, and in addition conclude that these facts overwhelm the presumption that it was part of the realty.

We have said of a disputable presumption, in the case of Monaghan v. *Standard Motor Co.*, 96 Mont. 165, 29 Pac. (2d) 378, 379: ''Such a presumption is successfully controverted when proof to the contrary overcomes it. By proof that satisfactorily overcomes it, it is meant that which is sufficient to sustain the affirmative of an issue—a preponderance of the evidence. Therefore, when the evidence preponderates against a disputable presumption, it fades away in the face of the contrary facts. (*In re Wray's Estate*, 93 Mont. 525, 19 Pac. (2d) 1051; *Welch* v. *All Persons*, 85 Mont. 114, 278 Pac. 110; *Nichols* v. *New York Life Ins. Co.*, 88 Mont. 132, 292 Pac. 253.) The fact, however, that the testimony is uncontradicted is not sufficient to overcome a disputable presumption and thereby to warrant a directed verdict, where the inferences to be drawn from the facts and circumstances are open to different conclusions by reasonable men. (*Maki* v. *Murray Hospital*, 91 Mont. 251, 7 Pac. (2d) 228.)'' Until a disputable presumption is overcome by evidence, a question of fact is raised between it and the evidence tending to destroy the force of the presumption.

We said in our opinion in the former case: ''When the dredging has been carried on to the extent required by the contract, the right of the lessee to remove fixtures may then be determined, and we think that question must be determined by the intention of the parties.'' This contract is now ended. As to whether plaintiff was entitled to remove the dredge depends upon what was the intention of the parties as determined from the contract, the surrounding facts and circumstances, due consideration being given to the effect of section 6670.

When we attempt to determine the intention of the parties in accordance with the foregoing rules, we find that different inferences may be drawn from the evidence by different reasonable men, and, hence, a question of fact is presented which can be determined only by the jury. This case should have been submitted to the jury for the solution of that question. The trial court was in error in granting the motion for a directed verdict.

It is argued now that in the decision of the previous case we decided the issues, so that the judgment there is in effect *res judicata* here. We there decided that while the contract was in force plaintiff could not maintain an action to remove the dredge. We now have the question presented, May the plaintiff remove the dredge after the contract has been terminated? This question could not have been litigated in the former action, as the contract was not ended until after the commencement of the present action. Hence the contention in this respect must fail. (See *Brennan* v. *Jones,* 101 Mont. 550, 55 Pac. (2d) 697.)

Again it is argued that this case comes within the rule that where a party has advanced money or done an act in part performance of the agreement and then stops short and refuses to proceed to its ultimate conclusion, the other party, being ready and willing to proceed and fulfill all the stipulations according to the contract, the former will not be permitted to recover what has been advanced or done. This rule was recognized by this court in the case of *Ellinghouse* v. *Hansen Packing Co.,* 66 Mont. 444, 213 Pac. 1087, and in cases cited therein. The rule is without application here, since the contract here under consideration is ended.

The judgment is reversed and the cause remanded to the district court of Madison county, with direction to grant the defendant a new trial.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART and MORRIS concur.

MR. JUSTICE ANGSTMAN:

I dissent. It seems to me that the dredge in question here is personal property as a matter of law, and that there is no room for a finding that it is real estate.

I agree with my associates that there is but one question involved in the case, and that is, Is the dredge real or personal property? That issue should have been met squarely by this court on the prior appeal of the case between the same parties, reported in 99 Mont. 347, 42 Pac. (2d) 1003. If it was and is personal property, then plaintiff had the right to remove it at the time of the prior action, and has that right now. If it were and be real estate, it had not the right to remove it then, and has not that right now.

I agree with the law announced by my associates to the effect that section 6670, Revised Codes, creates a rebuttable presumption that mining machinery, used in working mining property, becomes affixed to the realty and becomes a part thereof. I think, however, that the presumption that the machinery here was a part of the real estate is conclusively overcome by the evidence when the relationship of the parties is considered. Section 6670 simply makes the dredging boat a fixture, though not in fact attached to the realty. Section 6825 then provides, in effect, that the tenant may remove the fixture when it is affixed for the purpose of trade, manufacture, or domestic use, and where the removal can be effected without injury to the premises.

"As between landlord and tenant, or one in temporary possession of lands under any agreement whatever for the use of the same, the law is extremely indulgent to the latter with respect to the fixtures annexed for a purpose connected with such temporary possession." (*Wiggins Ferry Co.* v. *Ohio & M. R. Co.,* 142 U. S. 396, 12 Sup. Ct. 188, 194, 35 L. Ed. 1055, quoted approvingly in *Helena etc. Co.* v. *Northern Pacific Ry. Co.,* 62 Mont. 281, 205 Pac. 224, 228, 21 A. L. R. 1080; to the same effect see 26 C. J. 695.)

The effect of section 6670 is by legislative fiat to constitute all mining machinery, used in working a mine, fixtures. It is to be treated as if actually affixed to the realty. But, as be-

tween landlord and tenant, many fixtures are removable. (Compare *Merritt & Bourne* v. *Judd & Byrne,* 14 Cal. 59, 60; *Alberson* v. *Elk Creek Min. Co.,* 39 Or. 552, 65 Pac. 978; *Gasaway* v. *Thomas,* 56 Wash. 77, 105 Pac. 168, 20 Ann. Cas. 1337.) I think the dredge boat retained its character as personalty, and that the tenant has the right of removal under section 6825.

My associates seem to relegate section 6825 into the discard. The reasoning by which they accomplish this result is fallacious, and so much so that able counsel for the landlord did not even suggest it. They say that section 6825 is a general statute and section 6670 a special one, and that the latter and not the former is controlling. True, section 6825 relates to all tenancies, while section 6670 relates only to mining property. But section 6670, instead of being special, is general in the sense that it covers all machinery used in developing mining property, regardless of the relationship between the person using the machinery and the owner of the real estate. It covers all mining property, regardless of the relationship of the parties. Section 6825, though general as to all tenancies, is yet special in the sense that it deals only with the relationship of landlord and tenant, and covers no other relationships.

Section 6670 is not special in the sense that it establishes a different rule from that declared in section 6825, when the relationship between the party using machinery in working a mine and the owner of the real estate is that of tenant and landlord. There is no repugnancy between the two sections so as to make applicable the rule announced in *State ex rel. Daly* v. *Dryburgh,* 62 Mont. 36, 203 Pac. 508, and other cases of like import, which commands that a special law will prevail over a general one; but if so, then section 6825 should be held the special law dealing specially with the relation of landlord and tenant. I think, however, the two sections should be read together and, when this is done, both can be given effect. There is no conflict between them.

To hold, as do the majority, that section 6825 has no controlling force under the facts here, is to overrule the holding in *Helena etc. Co.* v. *Northern Pacific Ry. Co.,* supra. In the

last-cited case reference was made to what is now section 6825, and the court was careful in holding that the relationship of landlord and tenant did not exist between the parties involved. It said: "The facts alleged preclude the notion that they bore toward each other the relation of landlord and tenant. Even so, it does not follow as a matter of law, that the tracks were trade fixtures, and subject to removal by the defendants as such. Whether they were or not depends upon the relation existing between the parties, at the time the tracks were laid and their intention with respect to them." If section 6825 has no force, when applied to a mining tenant, then there was no occasion in the case just cited to discuss the question as to whether that relationship existed between the parties at the time the tracks were laid. As I read the majority opinion, the fact that the relationship of the parties was that of landlord and tenant is not a circumstance longer to be considered in determining the intention of the parties with respect to fixtures placed upon mining property. In this, I think my associates are in error. I think section 6825 is applicable here, and that under it plaintiff has the right to remove the dredge.

Moreover, I think the contract of lease between the parties demonstrates on its face that it was never the intention of the parties that the dredge boat should become a part of the real estate so as to transfer ownership to the landlord. If it were intended to become real estate, then, instead of the tenant assuming the obligation to operate the dredge for a period of ten years, he would have reserved the right and privilege so to do.

If the landlord supposed that the dredge property was to belong to him, after being placed on the mining property, then is it not strikingly strange that the parties did not concern themselves, at the time of contracting, with the question as to whether the tenant was the owner of the machinery before placing it on the mining property? That this is a vital matter is plain. (See 26 C. J. 671, and *Eisenhauer* v. *Quinn,* 36 Mont. 368, 93 Pac. 38, 14 L. R. A. (n. s.) 435, 122 Am. St. Rep. 370.) And if the landlord intended at the time of contracting that all

machinery used by the lessee in working the property was to become a part of the real estate and belong to the landlord, is it likely that he would contract without specifying anything, as here, as to the size or value of the dredging machinery, or whether it was free from encumbrances? I think not.

The written contract indicates clearly that the only question concerning which the landlord was interested was in having his property worked by the dredging machine. He was contracting for the use, and not for the construction, of a dredging outfit. He was not interested in enhancing the value of his real estate to the extent of twelve or fifteen thousand dollars—which is shown here to be the present value of the dredge boat—and which would inure to the benefit of the Federal Land Bank of Spokane, the holder of a mortgage on the real estate, if in fact it became a part of the real estate. And clearly the tenant never intended that it should become real estate and its ownership therein forfeited the moment the machinery was placed on the mining property.

Defendant offered to show that when the contract was entered into between him and Nelson Story, plaintiff's predecessor in interest, Story informed him "that when he quit dredging the Homer Wilson property that he, Homer Wilson, could have the dredge for a chicken coop." This offered testimony, if admitted, would have tended to show that it was not the intention of the parties that the dredge should become the property of the landlord as soon as it was placed upon the mining property. The lessee under this offered testimony assumed to exercise ownership over it during the dredging operations. This negatives any intention that the dredge should belong to the landlord as soon as placed upon the property.

Defendant also offered to show that he relied upon the above statement and would not have entered into the contract except for the statement. This offered testimony, when considered as an additional consideration for the contract, was inadmissible as varying or adding to the terms of a written contract. (Sec. 10517, Rev. Codes; *Webber* v. *Killorn*, 66 Mont. 130, 212 Pac. 852; *Burnett* v. *Burnett*, 68 Mont. 546, 219 Pac. 831.) So far

as it was admissible to prove the intention of the parties as to whether the dredge retained its character as personalty, it was more beneficial to plaintiff than defendant. So that, even if the offered evidence should have been received as evidence of the intention of the parties, I am of the opinion that there is room for but one reasonable conclusion by reasonable men, and that is that the machinery retained its character as personalty and belongs to plaintiff.

Believing, as I do, that if the jury would find the dredge to be real property, with ownership in defendant, we could not sustain its finding on the undisputed facts, together with the evidence which was offered and refused, I think the court properly granted the motion for directed verdict, and that the judgment should be affirmed.